Alexander KERKAM, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. 84–2656.

United States District Court, District of Columbia.

Sept. 30, 1987.

As Corrected Oct. 1 and Nov. 19, 1987.

Michael J. Eig, Washington, D.C., for plaintiffs.

Deborah Miron, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

■ The plaintiffs filed this action pursuant to the Education for All Handicapped Children Act (EHA), as amended, 20 U.S.C. § 1400 *et seq.*, 29 U.S.C. § 794, 42 U.S.C. § 1983, the Fifth Amendment to the Constitution of the United States, and the decision in *Mills v. District of Columbia Board of Education,* 348 F.Supp. 866 (D.D. C.1972). The case came before the Court on defendants' motion to dismiss or in the alternative, for summary judgment. Plaintiffs did not oppose so much of the motion as sought to dismiss all claims other than those made pursuant to the EHA; thereafter all claims, other than those arising under the EHA were dismissed. In addition, the Court concludes that the District of Columbia Board of Education is not a suable entity and must therefore be dismissed as a party. *See Tschanneral v. District of Columbia Board of Education,* 594 F.Supp. 407 (D.D.C.1984).

The case came before the Court for a nonjury trial. This memorandum constitutes the Court's findings of facts and conclusions of law pursuant to Fed.R.Civ.P. 52.

I

The Court makes the following findings of fact:

1. Alexander Kerkam was born on April 18, 1968, and is severely retarded.

2. The Kerkam family lived in Fairfax County, Virginia, from 1976 to 1984.

3. The Kerkam family moved to the District of Columbia in January 1984.

4. From 1976 to 1984, Alexander received a special education at the Fairfax Public School system.

5. The parents became dissatisfied with the special education program in Fairfax, Virginia.

6. The parents requested and received a due process hearing in Fairfax on or about January 8, 1981.

7. The state reviewing officer found the Fairfax placement appropriate. The state reviewing officer was upheld on appeal.

8. The plaintiffs at that time did not want a residential placement for Alexander. Indeed, they made every effort to place Alexander in a special education program where he could attend school during the day and reside at home with his parents.

9. Shortly after the hearings in Virginia, the parents placed Alexander in the Keystone City Residence (Keystone), a group home in Pennsylvania, and the Willow Street Day School (Willow Street), for handicapped children, both located in Scranton, Pennsylvania.

10. At all times relevant to this lawsuit, Alexander has remained at Keystone and Willow Street.

11. After the plaintiffs placed Alexander in the above residence and school located in Scranton, Pennsylvania, they asked the State of Virginia to pay for the placement. The State of Virginia refused to do so.

12. The Kerkams did not pursue their action against the State of Virginia because at that point they decided to move to the District of Columbia. One of the reasons for that move was that they thought they had a better chance of receiving an appropriate placement for Alexander in the District of Columbia than in the State of Virginia. The plaintiffs made a determination not to appeal to a court of competent jurisdiction in Virginia. Indeed, the plaintiffs concluded that they would move to the District of Columbia and further that they did not wish to take their appeal to the United States District Court for the Eastern District of Virginia because they

thought any such appeal would not be successful.

13. The plaintiffs notified officials of the District of Columbia Public Schools (DCPS) that they would be seeking a special education placement for Alexander. School officials were responsive to their request, and even prior to the plaintiffs moving to the District of Columbia, school officials began to consider that request and an appropriate placement for Alexander.

14. The plaintiffs moved to the District of Columbia in January 1984.

15. After giving consideration to a placement for Alexander, DCPS proposed to place Alexander in the Mamie D. Lee School in the District of Columbia, a public educational facility. The parents disagreed with this placement.

16. The parents visited the Mamie D. Lee School and after that visit reached a decision that the school was not appropriate for Alexander.

17. The notice of proposed change in placement in which DCPS proposed placing Alexander at the Mamie D. Lee School did not meet the requirements of the EHA. Nevertheless, the parents were not prejudiced by the notice and were aware of the reasons why DCPS had proposed Mamie D. Lee School.

18. The parents requested a due process hearing. Two such hearings were held.

19. One hearing was held on April 3, 1984. At that time the hearing officer heard evidence presented by the parents and DCPS. Thereafter, the hearing officer issued a determination on April 30, 1984. The hearing officer concluded that "Alexander does not require a residential program to be provided an appropriate special education program." The hearing officer noted that this was a "difficult decision" because she was aware of the demands and stresses that maintaining a severely handicapped child in the home placed upon the family. She noted however that the evidence was not persuasive that Alexander required residential placement in order to receive an appropriate educational program

and she further noted that the fact that Alexander did not succeed in Fairfax County schools was not given great weight because the programs offered by Fairfax County and DCPS were not identical.

20. While finding that Alexander did not require a residential program, she found that Alexander's Individual Educational Program (IEP) did not reflect the specific program provisions that would be provided to Alexander according to the oral testimony. She concluded that the DCPS proposed placement was not appropriate given the composition of the class. She noted that Alexander's IEP must be revised to include all special education and related services that the program at Mamie D. Lee School would offer including physical therapy, parent training, extended day program provisions, ambulation assistance and gross motor development. The hearing officer directed DCPS to propose an appropriate special education program for Alexander within 20 working days of the issuance of her decision. Finally, she noted that Alexander would require at least a six month adjustment period in any program. Based upon his past history she observed that "some regression should be expected and over the first year, progress will be negligible, and over the second year it will be minimal, at best."

21. DCPS thereafter submitted a new proposed program for Alexander. That program was submitted by way of a notice of proposed change in placement directed to the parents. That notice, like the earlier notice, did not comply with the requirements of the EHA. The Court finds, however, that the parents were fully apprised of the recommendations and reasons for the recommendations given by DCPS and were not prejudiced by the proposed notice.

22. The parents disagreed with the program proposed by DCPS. That program, like the earlier program, would place Alexander at Mamie D. Lee School but allegedly incorporated the changes directed by the hearing officer.

23. The parents requested a second due process hearing and that due process hearing was held on July 10 and 13, 1984.

24. After taking into consideration the evidence offered at the hearing, the hearing officer made a determination that DCPS had not complied with the earlier determination. She observed "DCPS failed to specify objectives related to the annual goal of reinforcement of acquired skills included in the self-help/socialization section of the IEP." She observed in addition that the proposed placement at Mamie D. Lee School was not appropriate because it did not include an integrated, cooperative, coordinated opportunity for daily living skill reinforcement, recreational activities and peer interaction after the end of the six hour school day. She further noted that the proposed placement at Mamie D. Lee was not appropriate because there is "no class constituted that insures that Alexander will be in a classroom which can, in fact, implement his IEP." Finally she found that, consistent with her previous determination, that "Alexander does not require residential care in order to benefit from an appropriate special education program." She noted that "residential programing is not educationally indicated nor required." And, she further noted that "there is no dispute that Alexander can benefit from residential programing, but it is not the least restrictive environment in which his special education needs can be met."

25. The hearing officer directed that DCPS was to submit to the parents a placement that is appropriate to meet Alexander's special educational needs within five working days of the issuance of her decision.

26. A third proposed placement was submitted by DCPS and the hearing officer made a further determination dated August 13, 1984. In that determination she referred to the two earlier determinations and concluded that the program then being recommended by DCPS was substantially different from the programs recommended earlier. She stated that she understood plaintiff's concern that the IEP might not be implemented at Mamie D. Lee, however, she stated that the evidence indicated that the program at Mamie D. Lee could meet Alexander's special educational needs.

27. Throughout this period of time, Alexander never attended Mamie D. Lee but remained in his placement at Willow Street while living at the Keystone.

28. The Court finds that in seeking to propose a program for Alexander and in seeking to implement the IEP, DCPS was acting in good faith.

29. The Court finds that the program proposed by DCPS, that is the program at the Mamie D. Lee School, was an appropriate day program as far as it went. However, the Court finds that Alexander required more than a day program and that the group home program (Keystone), although it is not a part of the school itself, constitutes an important component of Alexander's total educational program. In this connection, it is significant that the Residential Review Committee (RRC), after considering plaintiff's request for a residential placement at the Willow Street and Keystone and while determining that a residential placement was not required, observed that "several committee members felt strongly that the success of the day placement provided through Keystone is heavily dependent upon the supports provided outside of the educational setting and that without such supports, the day program would probably not succeed." *See* Plaintiff's Exhibit 15. The RRC nevertheless concluded that "since Alexander has demonstrated that he can function outside of a 24 hour institutional setting, then, recommending residential treatment would be recommending a level of restriction beyond his current need."

30. The Court concludes that Willow Street represents an appropriate day placement for Alexander. The Court further concludes that the Keystone facility, is a group home, which contains certain components which are necessary to augment Alexander's placement and education at Willow Street.

## II

The Court has set forth specific findings in Part I, *supra*. In this part the Court briefly elaborates on why it reached the

decision that Alexander requires a residential placement.

As noted, although the plaintiffs, in appealing from the determination by DCPS and the hearing officer that Alexander does not require a residential placement, cite several "defects" in procedures such as the failure of the hearing officer to consider the placement of Alexander at the private facilities recommended by the parents, and the defects in the notice of proposed placement, the Court need not focus on those in this very unusual case.

This case is unusual in that Alexander has been placed by his parents in a day placement in Scranton, Pennsylvania, where he receives special education training while he lives in a group home placement in the same city, the Keystone Residence. While at first glance it might appear that the Court is merely comparing a day placement at Mamie D. Lee School with a day placement at Willow Street, the fact is that there seems to be no question that Alexander has shown progress in his placement at the Keystone—Willow Street facilities, and that the group home placement has proved beneficial and has augmented his placement at Willow Street. Alexander's parents have testified that when Alexander returned home that his condition appeared to deteriorate even though they made earnest attempts to continue to carry out the program and the training at home.

It seems clear throughout the time that the parents have sought a special education placement for Alexander that they were not attempting merely to remove him from the home. Indeed, the evidence is that these parents made every attempt to maintain Alexander at home while having him placed in a special education day program in Fairfax County. The parents genuinely thought and felt that that day program was not meeting Alexander's needs, and with great reluctance they then decided to place Alexander in the Scranton, Pennsylvania facilities. Normally, when the Court considers a residential program, it is a program in which the school itself is a residential facility. Here, Willow Street is a day special education facility, but as noted, that program is augmented by the care Alexander receives at the group home. Perhaps this is the type of program that DCPS may wish to consider as a public facility in the District of Columbia. There is no evidence that DCPS has comparable facilities in the District of Columbia at this time.

The Court is satisfied that DCPS made honest, legitimate and good faith attempts to accommodate Alexander in the Mamie D. Lee School facility. The Court finds no evidence of bad faith on behalf of DCPS or the members of the school system who testified before the Court and at the administrative hearings. And, the Court finds it significant, as noted in Part I, *supra,* that even the RRC was concerned over the impact of the dual placement at Scranton. That RRC seemed to recognize that Willow Street and the success of Alexander's program at that school is heavily dependent upon the supports provided outside of the educational setting at Keystone. And they noted that without such supports the day program would probably not succeed. It appears then that in this particular situation, for some reason not clearly explained to the Court, and perhaps not fully understood by the parties, the plaintiffs have found a program which is uniquely situated to provide the special educational needs of this child. The Court is satisfied based upon all the evidence presented that the Keystone—Willow Street program represents an appropriate placement for Alexander. The Court is further satisfied that it is possible that a similar type of group home, day school placement in the District of Columbia might be appropriate, but that no such program exists today.

The Court, like the hearing officer, found this to be a very difficult decision and in considering its findings and in reaching its conclusions, the Court attempted to carefully read through all of the documents presented, to review the testimony of the witnesses in Court, and to listen to the tapes of the administrative proceedings, and to review the record of the administra-

tive proceedings in this case. Based upon all of that evidence the Court concludes that, taking into consideration the total program offered at Mamie D. Lee, that is, the day school program together with the extended program and services offered by DCPS to augment that program, and the additional fact that Alexander would be living at home with his parents, that that total program offered by DCPS is not appropriate to meet the needs of Alexander. The Court concludes that the program at Keystone—Willow Street is an appropriate program.

■ The issue raised then is what portion of the program should be funded by DCPS where a part of the program consists of a noneducational facility. It is clear that the placement at the Willow Street should be funded by DCPS and should be funded by DCPS as of the beginning of the school year 1984–1985 and that the placement at Willow Street constitutes Alexander's current educational placement.

With respect to the placement at Keystone, the Court understands that it is a separate and distinct placement which is not directly associated with Willow Street. The evidence presented however, demonstrates to the Court that the Keystone Residence and the program in which Alexander is involved at that home is an important part of his total educational program. The question is raised then whether DCPS should be required to pay for a part or all of Alexander's placement at the Keystone or whether the parents should be required to pay for Alexander's room and board at the group home with DCPS being required to pay for any additional charges for services rendered to Alexander including such facts as additional training at the Keystone facility. It seems that it is impossible for Alexander to live at home and to make the same gains while living at home and attending school as is being accomplished while Alexander is attending the school and living in the group home in Scranton. Thus, the Court concludes that the home itself is an important part of the overall program being offered to Alexander, and the fact that Keystone and the Willow Street are not a part of the same facility is not controlling. It is the *total* program which controls, and the total program includes both the school and the group home. Accordingly, the Court concludes that the District of Columbia should be required to fund Alexander's placement not only at Willow Street but at the Keystone as well.

### III

In sum, the Court finds that DCPS and its officials have acted in good faith in seeking to find an appropriate special educational placement for Alexander. The Court further finds and concludes that the Mamie D. Lee facility is not appropriate for the needs of Alexander. The Court further finds and concludes that Willow Street School and the Keystone Residence represents an appropriate placement for Alexander. The Court further finds that Willow Street and Keystone together represent an appropriate educational placement for Alexander. The Court further finds that pursuant to the decision in *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), that the District of Columbia must now reimburse the parents for Alexander's placement at the above Scranton, Pennsylvania facilities since those facilities represent an appropriate educational placement for Alexander. Plaintiffs are entitled to reimbursement for the 1984–85, 1985–86, 1986–87 and 1987–88 school years. The Court further finds that pursuant to 20 U.S.C. § 1415(e)(3) that the Keystone Residence and the Willow Street School represents Alexander's "current educational placement".

An appropriate Order will be entered.