## Alexander KERKAM, et al.

v.

## Floretta McKENZIE, Superintendent, D.C. Public Schools, et al., Appellants.

### No. 87–7212.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1988.

Decided Dec. 9, 1988.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellants.

Michael J. Eig, with whom Matthew B. Bogin and Margaret A. Kohn, Washington, D.C., were on the brief, for appellees.

Before WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In order to qualify for federal grants under the Education for All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.* (1982 & Supp. IV), states and the District of Columbia must offer a "free appropriate public education" to all handicapped children. *Id.* at § 1412(1). They may do so either by providing it directly in public facilities or by paying the costs of a private facility. *Id.* at § 1413(a)(4)(B); see also *School Committee of the Town of Burlington v. Dep't of Education*, 471 U.S. 359, 369–71, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985) (parents entitled to reimbursement for their expenditures on private special education where that placement, rather than proposal of school authorities, is found "appropriate"). If the state (or District) makes an appropriate education in a public facility available to the child, it need not pay for his education at a private one. 34 C.F.R. § 300.403 (1987).

Born in 1970,[1] Alexander Kerkam is a severely retarded youth with approximately the capacity of a two-year-old for most functions. His handicaps affect his ability to walk and to communicate by word or sign.

His parents, James and Roberta Kerkam, placed him in 1982 in the Willow Street Day School, a private school for handicapped children, and arranged for him to live at the Keystone City Residence, a group home, all at their own expense. Both Willow Street and Keystone are in Scranton, Pennsylvania. When they moved to the District in January 1984, they sought a special education placement for Alexander from the District of Columbia Public Schools ("DCPS").

As required by the Act, 20 U.S.C. § 1401(a)(19), the DCPS formulated an Individual Educational Program ("IEP") for Alexander. In the IEP, the DCPS proposed to place him in a day program at the Mamie D. Lee School, a public special-educational facility located in the District. The Kerkams objected to the DCPS's position that Mamie D. Lee was appropriate for Alexander and sought to have the IEP modified to require placement at Willow Street–Keystone. The matter went to a hearing officer as provided in the Act. Although consistently rejecting the Kerkams' contention that only residential placement (such as that offered by Willow Street–Keystone) was appropriate, the officer twice found the proposed placement at Mamie D. Lee inadequate. Ultimately the DCPS agreed to provide additional hours and services, and in light of those supplements the officer found Mamie D. Lee's program appropriate.

Alexander and his parents sued to overturn the hearing officer's decision under the Act's provision for district court review. See 20 U.S.C. § 1415(e). The district court found that the DCPS's proffered education was not adequate and ordered reimbursement. *Kerkam v. District of Columbia Bd. of Educ.*, 672 F.Supp. 519 (D.D.C.1987).[2] As the district court ap-

pears to have used an impermissible standard in assessing the DCPS's proposed placement, similar to one explicitly rejected by the Supreme Court in *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), and as it gave no apparent deference to the decision of the hearing officer below, as required by *Rowley*, we reverse and remand the case for further consideration.

I.

In *Rowley* the Supreme Court construed the concept of "appropriate" education as used in the Act. It observed that "the Act imposes no clear obligation upon recipient States beyond the requirement that handicapped children receive some form of specialized education." 458 U.S. at 195, 102 S.Ct. at 3045. Quoting the House Report, the Court found the states are required to make available a "basic floor of opportunity," *id.* at 200, 102 S.Ct. at 3047, which it viewed as one "reasonably calculated to enable the child to receive educational benefits," *id.* at 207, 102 S.Ct. at 3051, "sufficient to confer some educational benefit upon the handicapped child," *id.* at 200, 102 S.Ct. at 3048, or a program "individually designed to provide educational benefit," *id.* at 201, 102 S.Ct. at 3048.

The Court was unusually emphatic in identifying one requirement the Act did not impose. In at least four places it rejected the idea that the required education must "maximize the potential of handicapped children." *Id.* at 189, 197 n. 21, 198, 199, 102 S.Ct. at 3042, 3046 n. 21, 3046, 3047. Thus, proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act.

*Rowley* also spoke to the role of the district court in reviewing specific agency decisions under the Act. Some of the statutory language seems to suggest that de novo review is intended:

In any action brought under this paragraph [affording a civil remedy for per-

---

1. The parties agree that the district court's finding that Alexander was born in 1968, see *Kerkam v. District of Columbia Bd. of Educ.*, 672 F.Supp. 519, 520 (D.D.C.1987), was erroneous.

2. Alexander has remained in the Scranton facilities throughout the proceedings in this case.

sons aggrieved by the decision of state agencies] the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2). The Supreme Court, however, found that when considered in light of the Act as a whole, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." 458 U.S. at 206, 102 S.Ct. at 3051. The Court reasoned that § 1415(e)'s requirement that the reviewing court receive the records of the administrative proceedings carried an implied duty to give "due weight" to that record. It also argued that Congress's emphasis on fair procedures at the administrative level would be frustrated if courts could freely disregard the results.

The procedures are spelled out in § 1415(a) through (d) and are substantial. They include the rights to be accompanied by counsel and to "confront, cross-examine, and compel the attendance of witnesses." The hearing is characterized by Congress as an "impartial due process hearing," § 1415(b)(2), and is not to be conducted "by an employee of such agency or unit involved in the education or care of the child." *Id.*

■ Deference to the hearing officer makes sense in a proceeding under the Act for the same reasons that it makes sense in the review of any other agency action— agency expertise, the decision of the political branches (here state and federal) to vest the decision initially in the agency, and the costs imposed on all parties of having still another person redecide the matter from scratch. But the district court's authority under § 1415(e) to supplement the record below with new evidence, as well as

Congress's call for a decision based on the "preponderance of the evidence," plainly suggest less deference than is conventional.

■ We will not try here to capture the appropriate deference in some formula; even assuming a formula would greatly assist the district court on remand, the parties' briefing of the issue has been rather casual. But we think it clear that a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.

*McKenzie v. Smith,* 771 F.2d 1527, 1534 (D.C.Cir.1985), states that the DCPS "totally neglected its obligation ... to demonstrate that it could provide an appropriate placement for the child." This could be read as placing the burden on the school authorities regardless of the hearing officer's decision. But as the school authorities in *Smith* had lost before the hearing officer, we think the case is more properly read as requiring the loser, as the moving party, to shoulder the burden on appeal to the district court. See also *McKenzie v. Jefferson,* 566 F.Supp. 404 (D.D.C.1983) (burden on school authorities to show by a preponderance why the hearing officer's determination should be set aside). Such an allocation of the burden accords with *Rowley's* requirement of deference to the state agencies that must follow the statutorily mandated procedures—in this case, the hearing officer. See *Town of Burlington v. Department of Education,* 736 F.2d 773, 794 (1st Cir.), *aff'd on other grounds,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1984); but see *Grymes v. Madden,* 672 F.2d 321, 322 (3rd Cir.1982) (passing allusion to school district's burden of proof).[3]

In *Town of Burlington* the First Circuit remarked that after the district court has "endeavor[ed] to respond to the hearing

---

**3.** Under District of Columbia law, the hearing officer's determination is final, subject only to review in the district court. In *Rowley* itself, the state procedures called for an appeal to the state Commissioner of Education. We do not

address the issue of deference in cases involving one or more levels of post-hearing administrative appeal. See *Karl v. Board of Educ. of Geneseo County School Dist.,* 736 F.2d 873, 876 (2d Cir.1984).

officer's resolution of each material issue," it is "free to accept or reject the [administrative] findings in part or in whole." 736 F.2d at 792. We do not understand this to suggest that the requirement of deference evaporates once the district court has "responded," since that would be inconsistent with *Rowley*'s requirement that the court give the officer's findings "due weight."

## II.

■ We now turn to the evidence before the hearing officer and the court, and, most pertinently, the court's treatment of that evidence. At both stages expert witnesses testified at length about Alexander's steady, if still sadly limited, progress at Willow Street–Keystone. This included testimony that the group home provided beneficial evening reinforcement for Alexander's daytime schooling. Experts stated that he could be expected to regress, at least initially, if his placement were changed.

In addition, however, an expert from Mamie D. Lee described in detail that school's special facilities, its highly-trained faculty, its low student-faculty ratio, and other reasons for her conclusion that it was fully appropriate for Alexander's needs.

The hearing officer was ultimately persuaded that Mamie D. Lee, as modified for Alexander, measured up to the Act's standard. She rejected the contention that residential placement was essential, stating explicitly that she "could find no evidence that the absence of a residential program would prohibit [Alexander] from benefitting from an appropriate special education program." Appendix at 55–56; see also *id.* at 76 (finding, in hearing officer's second report, that Alexander was "not so functionally disabled that he requires round-the-clock or residential care to benefit from an appropriate special education program"); 672 F.Supp. at 522 (noting the finding).[4]

The district court opinion does not suggest that it found fault with the testimony as to what Mamie D. Lee could accomplish. Nevertheless, it concluded "that Alexander required more than a day program and that the group home program (Keystone), although it is not a part of the school itself, constitutes an important component of Alexander's total educational program." 672 F.Supp. at 522. The court found that Willow Street was an appropriate day placement for Alexander, and that Keystone "contains certain components which are necessary to augment Alexander's placement and education at Willow Street." *Id.* The court did not make a finding as to what those components might be, nor relate them to the standard by which they were deemed "necessary":

> It appears then that in this particular situation, for some reason not clearly explained to the Court, and perhaps not fully understood by the parties, the [Kerkams] have found a program which is uniquely situated to provide the special educational needs of this child. The Court is satisfied based upon all the evidence presented that the Keystone–Willow Street program represents an appropriate placement for Alexander. The Court is further satisfied that it is possible that a similar type of group home, day school placement in the District of Columbia might be appropriate, but that no such program exists today.

672 F.Supp. at 523.

As to the vital issue under § 1412(1), the court observed that Mamie D. Lee offered "an appropriate day program as far as it went," *id.* at 522, but concluded without clear explanation that the "total program offered by DCPS is not appropriate to meet the needs of Alexander," *id* at 524. Remarks in the opinion conflict in their implications as to the principle by which the

---

4. The Kerkams contended below that the hearing process was impaired by procedural irregularities. The district court held against the Kerkams on their allegations regarding improper notice by the DCPS, 672 F.Supp. at 521, 523, a matter that is not before us on this appeal. We do not foreclose consideration of the potentially prejudicial effect of any other procedural irregularities if on remand the court should rule against the Kerkams on their substantive claims. *Cf. Rowley,* 458 U.S. at 205–07, 102 S.Ct. at 3050–51 (stressing importance of procedural safeguards under the Act).

court reached this view. At one point the court said that it "seems that it is impossible for Alexander ... to make *the same gains* while living at home and attending school as is being accomplished while Alexander is attending the school and living in the group home in Scranton." *Id.* (emphasis added). The court's unspoken premise appears to have been that since Alexander was making progress at Willow Street–Keystone, it followed that any inferior placement was not appropriate. Appealing as that view must be, it is inconsistent with the "some educational benefit" standard of *Rowley* and is strongly suggestive of reliance on the potential-maximizing standard that *Rowley* forbids.

At another point, the court hinted at use of the proper standard. It quoted the Residential Review Committee (an apparently governmental body not clearly identified in the record so far as we can determine) as reporting that "several committee members felt strongly that the success of the day placement provided through Keystone is heavily dependent upon the supports provided outside of the educational setting and that without such supports, the day program would probably not succeed." *Id.* at 522. If "not succeed" is equivalent to failing to confer "some educational benefit," the reference suggests use of the *Rowley* standard. But here the difficulty is that the Residential Review Committee as a whole *rejected* the view that residential placement was required, as the court itself noted. *Id.* The district court gave no clue as to why it adopted the conclusion of "several committee members" in preference to that of the hearing officer vested with authority to resolve the matter. *Cf. Karl v. Board of Educ. of Geneseo County School Dist.*, 736 F.2d 873, 877 (2d Cir. 1984) (deference to state education authorities required even where there has been some disagreement among state officers). Moreover, at no place in its consideration of placement at Mamie D. Lee does the district court focus on *Rowley*'s interpretation of "appropriate," i.e., "reasonably calculated to enable the child to receive educational benefits."

Although the district court recited testimony on both sides of the problem, its unexplained preference for the conclusions of those who opposed the hearing officer's view appears to arise out of either an insistence on a potential-maximizing criterion, or a complete substitution of its judgment for that of the hearing officer, or both. Either would require us to reverse and remand for the district court to directly tackle the issue of whether the plaintiffs' showing is enough to overcome the hearing officer's conclusion that the program offered at Mamie D. Lee was "appropriate" as that term is used in § 1412(1).

*So ordered.*