Edward C. BRIGGS and Suzanne Briggs on Behalf of themselves and their minor child James Briggs, Plaintiffs–Appellees,

v.

The BOARD OF EDUCATION OF the STATE OF CONNECTICUT, and Gerald Tirozzi, Commissioner of Education, Edward Pepyne, Hearing Officer, and the New Haven Board of Education, Defendants.

Appeal of The NEW HAVEN BOARD of EDUCATION, Defendant–Appellant.

No. 1418, Docket 89–7488.

United States Court of Appeals, Second Circuit.

Argued June 19, 1989.

Decided Aug. 10, 1989.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, Daly, *J.*, holding that defendant-appellant the New Haven Board of Education (the Board) had failed to offer James Briggs, the minor child of Edward C. and Suzanne Briggs (the Briggs), an appropriate educational program as required by the Education of the Handicapped Act, 20 U.S.C. §§ 1400–1485 (1982 & Supp. V 1987), *as amended by* Handicapped Programs Technical Amendments Act of 1988, Pub.L. No. 100–630, 102 Stat. 3289 (the Act), that James was denied his right to a free public education and that the Briggs were entitled to reimbursement of the costs incurred in connection with sending James to a private school for the 1986–87 and 1987–88 school years. 707 F.Supp. 623 (D.Conn.1988).

We reverse.

## BACKGROUND

James Briggs was born on April 13, 1983. He suffers from a moderate to severe sensorineural hearing loss in both ears and mild to moderate speech and language delays. On May 2, 1986, when James was just over three years old, a Planning and Placement Team (PPT) meeting was held to evaluate James' need for special education and to develop a plan for James' placement. At the meeting, the PPT recommended that James be placed in the Board's pre-school program for hearing-impaired children and that he attend the Board's Pre-school Handicapped Summer School Program in the summer of 1986. The Briggs were of the opinion that James needed more interaction with non-handicapped children and should be "mainstreamed." Therefore, they declined to follow the PPT's recommendation and placed James in a summer program at The Soundings, a private nursery school that enrolled both hearing-impaired and non-hearing-impaired children. At The Soundings, James received speech and language therapy from the director of the school. At the end of the summer,

Lubbie Harper, Jr., New Haven, Conn. (The Harper Law Firm, New Haven, Conn., of counsel), for defendant-appellant.

Penn Rhodeen, New Haven, Conn. (Rhodeen and Dean, New Haven, Conn., of counsel), for plaintiffs-appellees.

Before MESKILL, PIERCE and MAHONEY, Circuit Judges.

James showed some improvement in his speech and language abilities.

A second PPT meeting was held on September 12, 1986. At that meeting, the PPT again found that James required special education and recommended that James be placed in the New Haven segregated preschool program for the hearing-impaired (the Board's program) for the school year. The justification for the recommendation was James' "[s]ignificant speech and language delays with hearing impairment." The Individualized Educational Program (IEP) stated that "[a] less restrictive environment will be appropriate when the intelligibility of his speech and language no longer interferes with his communication to peers [and] adults in his learning environment."

Disagreeing with that IEP, the Briggs, in the fall of 1986, returned James to The Soundings, where he remained for the school years 1986–87 and 1987–88. Pursuant to their rights under 20 U.S.C. § 1415 and Conn.Gen.Stat.Ann. § 10–76h(a) (West 1986), the Briggs requested an administrative hearing before the State of Connecticut Department of Education regarding the special education program that the Board offered for James. The Connecticut State Board of Education appointed a hearing officer and the hearing was held on December 12, 1986 and January 16, 1987. The Briggs' main contention was that James should have more interaction with non-handicapped children than was provided for by the Board's program and that therefore the Board's program was not an appropriate placement for James.

At the hearing, a comparison of the two pre-school programs revealed the following. The Board's program was held in an elementary school in New Haven. The program met five days a week, five hours a day during the 180 day school year. The teacher in charge of the pre-school program for the hearing-impaired held a Masters degree in education of the deaf and was a certified teacher of the hearing-impaired. She was assisted by two aides with experience working with hearing-impaired children. Seven children were enrolled in the program. The Board's program "stress[ed] language and vocabulary concentration." Specialized equipment, such as auditory trainers, which are FM receivers that amplify the sound that is transmitted by the teacher who wears a microphone, was used for part of the day. Students typically spend one or two years in the program and then are placed in non-specialized or mainstream kindergarten programs.

The program at The Soundings met three days a week for four hours a day. The director of The Soundings was a speech and language pathologist with a background in psychology and social work. She was not certified as a teacher of the hearing-impaired. None of the staff members at The Soundings had any special education training. Eighteen to twenty children were enrolled in The Soundings. Of those eighteen to twenty children, two or three besides James had speech and language problems.

At the hearing, several members of the Early Childhood Assessment Team (ECAT) that evaluated James regarding his educational needs and his readiness for a mainstreamed program testified. One ECAT team member who had tested James in April and September of 1986 testified that James was not ready for mainstreaming in September 1986 because of his inability to communicate with the children in the classroom and take advantage of the group teaching situation. The coordinator of the ECAT team, who had evaluated James in both the spring and fall of 1986, testified that James needed "a whole team approach, within a hearing impaired classroom, that there ha[d] to be not only a teacher of the hearing impaired but a speech therapist who c[ould] consult and do therapy with awareness and consultation about the curriculum and [James'] needs on a regular basis."

In a decision rendered on February 20, 1987, the hearing officer concluded that the program developed by the PPT, which recommended placing James in a segregated setting, was "reasonably designed to meet J[ames'] special education needs and is

therefore an appropriate program for him at this time." The hearing officer further found that "[t]he [Briggs] have failed to support their contention that J[ames'] needs can be met only in a social milieu of predominantly non-handicapped children." In addition, the hearing officer stated that "having concluded that the program offered by the Board is appropriate to meet J[ames'] special education needs, no need exists to discuss The Soundings program further." Finally, the hearing officer decided that "[b]ecause the placement of J[ames] at The Soundings was a unilateral act of the [Briggs], and because the Board had offered an appropriate program, the Board bears no financial responsibility for this placement."

Pursuant to their rights under the Act, the Briggs filed suit in the United States District Court for the District of Connecticut seeking review of the hearing officer's decision. They contended that the hearing officer erred in determining that the Board's program was an appropriate placement in the least restrictive environment and by effectively placing the burden on them to prove that James can only receive an appropriate education in a less restrictive setting. The Briggs asserted that the Board's actions constituted a denial of James' right to a free appropriate public education. The parties declined to present any additional evidence that had not been presented to the hearing officer, although they could have done so pursuant to 20 U.S.C. § 1415(e)(2). Therefore, the district court based its decision on the same evidence that was before the hearing officer.

After reviewing the record of the administrative proceedings, the district court concluded that "by the preponderance of the evidence before this Court and after giving due weight to the findings of the state hearing officer, ... the program offered by the New Haven Board was inappropriate within the meaning of [the Act], and ... James was denied his right to a free public education." The district court further found that the Briggs were entitled to reimbursement of the costs of enrolling James in The Soundings. The Board appeals, 707 F.Supp. 623.

We reverse.

## DISCUSSION

The Act provides that states must establish procedures to assure that

to the maximum extent appropriate, handicapped children, ... are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(5)(B). The education of handicapped children with non-handicapped children is commonly referred to as "mainstreaming."

The Act sets forth procedural safeguards, including administrative hearings before an impartial hearing officer, to guarantee that handicapped children and their parents or guardians are afforded their rights with respect to the provision of a free and appropriate public education. 20 U.S.C. § 1415(b)(2). A party who is dissatisfied with a hearing officer's decision may appeal the decision to a state court or a federal district court. 20 U.S.C. § 1415(e)(2). On appeal, "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* In reviewing whether a proposed program is appropriate, a court must determine whether the state has "complied with the procedures set forth in the Act" and whether "the individualized educational program ... [is] reasonably calculated to enable the child to receive educational benefits." *Board of Education v. Rowley by Rowley*, 458 U.S. 176, 206-07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). There is no explicit dispute concerning the state's compliance with the procedures set forth in the Act.

The issues here are whether the IEP developed for James was "reasonably calculated to enable [him] to receive educational benefits," *id.* at 207, 102 S.Ct. at 3051, and whether the policy in favor of mainstreaming renders James' placement in the Board's program inappropriate.

The Act states, in pertinent part, that " 'free appropriate public education' means special education and related services that ... (B) meet the standards of the State educational agency, ... and (D) are provided in conformity with the individualized education program required under section [1414](a)(5) [of this title]." 20 U.S.C. § 1401(18). However, as we recently noted, "[i]n application, the specific meaning of the 'free appropriate education' guaranteed by the [Act] can be a difficult issue for the courts." *Tucker v. Bay Shore Union Free School Dist.*, 873 F.2d 563, 565 (2d Cir.1989). While mainstreaming is an important objective, we are mindful that the presumption in favor of mainstreaming must be weighed against the importance of providing an appropriate education to handicapped students. *See Wilson v. Marana Unified School Dist.*, *No. 6*, 735 F.2d 1178, 1183 (9th Cir.1984). Under the Act, where the nature or severity of the handicap is such that education in regular classes cannot be achieved satisfactorily, mainstreaming is inappropriate.

In *Roncker ex rel. Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983), a case that the district court found "insightful and useful," the Sixth Circuit suggested a standard for examining mainstreaming. The Sixth Circuit stated that:

> In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting. If they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that some handicapped children simply must be educated in segregated facilities either because the handicapped child would not benefit from mainstreaming, because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the nonsegregated setting.

*Id.*

Although the district court did not explicitly so state, implicit in its analysis was the assumption that the Board's program was superior. The basis for this assumption was most likely that the Board's program included "intensive adult intervention and language therapy." Applying the *Roncker* criteria, the court reached its conclusion that the Board had not provided James with an appropriate placement. The court questioned the hearing officer's conclusion that the IEP was "reasonably designed to meet J[ames'] special educational needs and is therefore an appropriate program for him at this time." The district court opined that in using the "reasonably designed" standard, the hearing officer did not apply the proper legal standard. Stating that "the proper inquiry is whether ... the services offered could feasibly be provided in a mainstream program," the court concluded that "the program the New Haven Board recommended for James could feasibly have been offered in a much less segregated setting, if not in a substantially mainstreamed program such as that offered by Soundings." However, the court did not elaborate on how this could be done. Further, neither the court nor the Briggs pointed out anything in the administrative record to substantiate the claim that James' needs could be met in a less segregated setting. While the court noted that the services offered in a mainstreamed program would not be identical to those offered by the Board's segregated program, the court opined that "the benefits to James from obtaining the services in a mainstream setting outweigh any marginal loss of the effectiveness of those services provided in a mainstream rather than segregated program." In the court's view,

social interaction with and learning from non-handicapped children would be beneficial to James, while the "diminished effectiveness of language therapy in a mainstreamed program" was "minimal." Hence, the court concluded that a segregated program would be inappropriate under the Act.

We are not as convinced as the district court was that the benefits to James of mainstreaming outweigh the benefits that he would obtain from being placed in a segregated program that could effectively meet his needs. The IEP that was developed for James was geared toward providing him with the best educational program feasible. The IEP recommended placement in a segregated setting with a focus on speech, vocabulary and language skills in addition to intensive work with a speech therapist. We do not know if the same services can be provided in a less segregated setting like that at The Soundings. However, it is not our role to decide that question, nor was it the role of the district court.

A district court's scope of review is limited to determining whether "the State complied with the procedures set forth in the Act" and whether the IEP is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3051. As the Supreme Court held in *Rowley*, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Id.* at 207, 102 S.Ct. at 3051. Deference is owed to state and local agencies having expertise in the formulation of educational programs for the handicapped. *See id.* at 207–08, 102 S.Ct. at 3051–52; *see also Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1988). The PPT conducted thorough analyses of James' handicap and his special needs with full knowledge of the legislated preference for mainstreaming contained in the Act. The result of these analyses was the conclusion that because of James' dual handicaps, a segregated program would best serve his needs. That conclusion was in turn upheld by the state hearing officer, who agreed with the PPT that the proposed program was "appropriate to meet [James'] special education needs in the least restrictive environment." Because the officials' conclusion was reached after careful consideration by experts in the field of teaching the hearing-impaired, and the state review procedures properly applied the mainstreaming presumption set forth in the Act, *see Rowley*, 458 U.S. at 206 & n. 27, 102 S.Ct. at 3050–51 & n. 27; 20 U.S.C. § 1412(5)(B), that conclusion should not have been overturned.

We conclude that the district court erred in substituting its judgment for that of the agency experts and the hearing officer. Affording them the proper deference, we reverse the district court's finding that the program that the Board offered was inappropriate. Because we conclude that the Board had offered James an appropriate placement, the Briggs are not entitled to reimbursement of the costs of sending James to The Soundings. *Burlington School Committee v. Department of Education*, 471 U.S. 359, 373–74, 105 S.Ct. 1996, 2004–05, 85 L.Ed.2d 385 (1985); *Kerkam*, 862 F.2d at 885; 34 C.F.R. § 300.403(a) (1988).

Accordingly, the judgment of the district court is reversed.