Alexander KERKAM, a Minor/by his Father James KERKAM

v.

SUPERINTENDENT, D.C. PUBLIC SCHOOLS, et al., Appellants.

No. 90–7015.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1990.

Decided April 26, 1991.

Susan S. McDonald, Asst. Corp. Counsel for D.C., with whom Herbert O. Reid, Sr., Corp. Counsel for D.C., and Charles L. Reischel, Deputy Corp. Counsel for D.C., were on the brief, Washington, D.C., for appellants.

Michael J. Eig, with whom Matthew B. Bogin and Margaret A. Kohn were on the brief, Washington, D.C., for appellee.

Before BUCKLEY, WILLIAMS, and THOMAS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The District of Columbia appeals a judgment of the district court requiring it to reimburse costs incurred by Mr. and Mrs. James Kerkam for the private education of their retarded son, Alexander. As we find that the district court did not give sufficient deference to the determinations of the District of Columbia hearing officer, and because the evidence presented at the hearings and at trial demonstrated that the educational program offered Alexander by the District of Columbia met the standards established by the Education of the Handicapped Act, 20 U.S.C. §§ 1400–1485 (1988), we reverse.

## I. BACKGROUND

### A. Statutory

The Education of the Handicapped Act was enacted

> to assure that all handicapped children have available to them … a free appropriate public education which emphasizes special education and related services designed to meet their unique needs … [and] to assist States and localities to provide for the education of all handicapped children.

20 U.S.C. § 1400(c). To qualify for federal assistance under the Act, States (including the District of Columbia) must offer handicapped children an appropriate education free of charge in accordance with the standards set forth in section 612 of the Act. These include assurance that the special education program provided will be no more restrictive than required, given the nature or severity of the child's handicap. *See id.* § 1412(5)(B). The education may be provided by either public or private institutions. *See id.* § 1413(a)(4)(B). A State that offers a handicapped child an appropriate education in a public facility need not pay for his private schooling. *See* 34 C.F.R. § 300.403(a) (1990).

### B. Factual

Alexander Kerkam was born in 1970 and is severely retarded. In 1982, his parents, who were then living in Virginia, placed him at their own expense in the Willow Street Day School, a private school for handicapped children, and the Keystone City Residence, a group home. Both facilities are located in Scranton, Pennsylvania. Alexander has remained at those institutions at all times relevant to this case. *See Kerkam v. McKenzie*, 862 F.2d 884, 886 (D.C.Cir.1988). The Kerkams moved to the District of Columbia in January 1984. Before their move, the Kerkams informed the District of Columbia Public Schools ("DCPS") of their plans to seek special education for Alexander. *See id.*

As required by the Act, DCPS officials formulated an Individualized Educational Program ("IEP") for Alexander. 20 U.S.C. § 1401(a)(19). They determined that a day placement at the Mamie D. Lee School, a D.C. public school, would be appropriate. The Kerkams disagreed. 862 F.2d at 886. On April 3, 1984, the Kerkams and the DCPS presented evidence to a hearing officer, who concluded that Alexander did not require a residential program. She found, however, that his IEP required revision to incorporate certain specific services and to provide him with an extended day program. She noted that the boy would probably require six months to adjust to any new regime, and that regression followed by minimal to slow progress was to be expected.

The DCPS proposed a new program that the Kerkams also found unsatisfactory. At a second hearing, in July 1984, the hearing officer determined that the DCPS had not complied with her earlier requirements. Most importantly, it had failed to include an integrated opportunity for daily living skill reinforcement, recreation, and peer interaction after the six-hour school day. Although she recognized that Alexander could benefit from residential placement, the hearing officer determined that the less restrictive environment proposed by the DCPS would meet the requirements of his IEP. The least restrictive environment is the one that confers some educational benefit but most closely approximates education with nonhandicapped children in the school that the handicapped child would attend if he had no handicap. *See* 20 U.S.C. § 1412(5)(B); 34 C.F.R. § 300.552. On August 13, 1984, the hearing officer determined that the DCPS's third proposal, which provided for Alexander to live at home while attending the Mamie D. Lee School, would meet the boy's educational needs.

Still dissatisfied, the Kerkams sued in federal court. After a bench trial, the district court agreed that Alexander required a residential facility and noted that the parents were not motivated by a desire to keep their son away from home. Although the court recognized that the school and the residential programs were not unified, it found that the care Alexander received at the Keystone home augmented the educational program provided by Willow Street. *Kerkam v. District of Columbia Bd. of Educ.*, 672 F.Supp. 519, 523 (D.D.C. 1987), *rev'd and remanded sub. nom. Kerkam v. McKenzie*, 862 F.2d 884 (D.C. Cir.1988). It concluded that Alexander needed this supplementation:

> It appears then that in this particular situation, for some reason not clearly explained to the Court, and perhaps not fully understood by the parties, the plaintiffs have found a program which is uniquely situated to provide the special educational needs of this child. The Court is satisfied based upon all the evidence presented that the Keystone–Willow Street program represents an appropriate placement for Alexander. The Court is further satisfied that it is possible that a similar type of group home, day school placement in the District of Columbia might be appropriate, but that no such program exists today.

*Id.* Because the court found the program offered by Mamie D. Lee to be inappropriate, it required the District to reimburse the Kerkams for the costs of both Keystone and Willow. *See id.* at 524.

On appeal, we noted that the Act does not require that a placement maximize the potential of the handicapped child; rather, the placement need only provide a program that is " 'reasonably calculated to enable the child to receive educational benefits.' " 862 F.2d at 886 (quoting *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982)). We observed that the district court, in requiring the residential placement, appeared to have as its

> unspoken premise ... that since Alexander was making progress at Willow Street–Keystone, it followed that any inferior placement was not appropriate. Appealing as that view must be, it is inconsistent with the "some educational benefit" standard of *Rowley* and is strongly suggestive of reliance on the potential-maximizing standard that *Rowley* forbids.

*Id.* at 889. We also noted that the district court must give due weight to the determination of the administrative officer in a claim under the Act. *See id.* at 887 (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3050). Although we declined to "try here to capture the appropriate deference in some formula," we emphasized that

> a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so.

*Id.* Accordingly, we directed the district court on remand

to directly tackle the issue of whether the plaintiffs' showing is enough to overcome the hearing officer's conclusion that the program offered at Mamie D. Lee was "appropriate" as that term is used in § 1412(1).

*Id.* at 889.

On remand, the district court expressed its belief "that it properly applied the *Rowley* standard in ruling in favor of the plaintiffs," and again concluded that "a residential placement is necessary and is reasonably calculated to enable the child to receive educational benefits." *Kerkam v. Jenkins,* No. 84–2656, mem. op. at 3–4 (D.D.C. Dec. 27, 1989) (internal quotes omitted). The court first stated that the hearing officer did not explain why a residential placement was unnecessary, nor why the Mamie D. Lee program was appropriate. *See id.* at 4–9. Without these "reasoned and specific findings," the court ruled, "it owes little deference to the hearing officer's determination." *Id.* at 9–10; *see id.* at 10–12.

The court then explained why it concluded that Alexander required a residential placement and that the Willow/Keystone program was appropriate, while Mamie D. Lee's was not. First, it cited an evaluation prepared by the Kennedy Institute of Baltimore in 1980–1981 that recommended residential placement for Alexander. Second, the court noted that the hearing officer's recommendation relied upon the participation of the parents, even though the evidence indicated that the Kerkams' earlier attempts to provide him with adequate care at home had failed. *See id.* at 13–14. Third, the court questioned the hearing officer's reference to the "less restrictive" nature of a Mamie D. Lee placement: "[I]t appears that both Mamie D. Lee and Willow represent restrictive placements. The only difference is that under one program the child was to live at home, while in his present placement he lives at Keystone." *Id.* at 14. The court reasoned that because having Alexander live at home had proved unworkable, "[t]he residential placement is required, not as a means of maximizing Alexander's benefits, but because it is necessary in order that Alexander receive 'some educational benefit.' " *Id.* at 14. Finally, the court stressed the substantial progress that Alexander had made at Willow/Keystone. Concluding that Alexander's need for a residential placement made Mamie D. Lee inappropriate, the court ordered that the Kerkams be reimbursed the cost of Alexander's placement at Willow and Keystone. *See id.* at 14–16.

## II. ANALYSIS

On examining the record before the district court, we reluctantly conclude that its decision on remand turned on its understandable concern for Alexander's best interests rather than on the appropriateness of the educational program proposed by the DCPS. There seems to be little doubt that Alexander would have made less progress under the District of Columbia program, but *Rowley* precludes our taking that factor into account so long as the public-school alternative confers some educational benefit. *See* 458 U.S. at 200–01, 102 S.Ct. at 3047–48.

In reaching its decision, the district court gave insufficient weight to the findings of the hearing officer. The court rightly observed that a decision without "reasoned and specific findings" deserves "little deference." Mem. op. at 9–10. The officer's final determination, to be sure, offers only the bare conclusion that the program at Mamie D. Lee could meet Alexander's educational needs. But when it is read together with the two determinations that preceded it, and in light of the statutory preference for the least restrictive educational environment appropriate to the needs of the child, 20 U.S.C. § 1412(5)(B), the basis for the conclusion becomes clear. Contrary to the conclusion of the district court, a residential placement far from home is more restrictive than a local extended-day program. As the hearing officer noted, "[t]here is no dispute that Alexander can benefit from residential programming," Hearing Officer's Determination, at 10 (July 26, 1984), Joint Appendix ("J.A.") 115; nevertheless,

Alexander is not so functionally disabled that he requires round-the-clock or residential care to benefit from an appropriate special education program. Alexander tests in the highest range of the severely retarded and he possesses many self-care functional skills which would enable him to be educated in a setting that is less restrictive than a residential setting.

*Id.* at 11, J.A. 116. Based on the evidence before her, then, the hearing officer was able to conclude that a nonresidential placement could confer some educational benefit upon Alexander. We conclude that taken as a whole, the administrative record contains sufficiently reasoned, specific findings to support this conclusion.

Nor did the additional evidence submitted at trial provide a basis for disregarding the hearing officer's determination. The DCPS presented witnesses who testified that Mamie D. Lee would give Alexander some educational benefit. Only the Kerkams testified to the contrary. The Kennedy Institute report, on which the court relied, evaluated Alexander several years before the determination here, and seemed to conclude only that residential placement was desirable, not that it was essential. Although the Kerkams showed that Willow/Keystone provided an excellent environment for Alexander, they failed to demonstrate that the DCPS alternative was not appropriate.

The district court nevertheless focused on the desirability of residential placement, and stated that it "cannot ignore that Alexander has made substantial progress at Willow/Keystone." Mem. op. at 14. Compelling though that consideration is, the inquiry as to the appropriateness of the State's program is not comparative. *See Knight v. District of Columbia,* 877 F.2d 1025, 1029 (D.C.Cir.1989). The benefit that Alexander has received from his placement at Willow/Keystone thus has no bearing on whether the District must reimburse the Kerkams for its cost. The DCPS need only show that its alternative program confers some educational benefit, and the record demonstrates that the DCPS has done so.

## III. CONCLUSION

When confronted with a case like Alexander's, no decisionmaker can casually deny a child and his overburdened parents resources they can so well use; perhaps this is what the hearing officer meant when she called this "a difficult decision." Hearing Officer's Determination, at 9 (Apr. 30, 1984), J.A. 95. The command of Congress, however, is not difficult to discern. Congress has decided that every handicapped child should receive an appropriate education at public expense. The District of Columbia has met that standard. The Kerkams have laudably provided their child with a program intended to maximize his progress, but the Act does not require the District to reimburse them. The judgment of the district court is therefore

*Reversed.*