Mathew REID, et. al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA,**
et. al., Defendants.

Civil Action No. 02cv1611.

United States District Court,
District of Columbia.

March 16, 2004.

Cary D. Pollak, Office of Corporation Counsel, District of Columbia, Washington, DC, Robert I. Berlow, Crownsville, MD, for Plaintiff.

Cary D. Pollak, Office of Corporation Counsel, District of Columbia, Washington, DC, for Defendants.

### MEMORANDUM OPINION

WALTON, District Judge.

The instant lawsuit concerns the education of a young child, Mathew Reid, who is enrolled in the District of Columbia Public Schools ("DCPS") system. Mathew and his mother Gwendolyn Reid (collectively the "plaintiffs"), brought this action against the District of Columbia and Elfreda W. Massie, in her official capacity as Interim Superintendent of the DCPS (collectively the "defendants").[1] Specifically, plaintiffs challenge a hearing officer's decision ("HOD") which concluded (1) that an award of 810 hours of compensatory education services was sufficient to compensate Mathew for the DCPS' prior denial of

---

**1.** Elfreda W. Massie has been substituted for Paul Vance pursuant to Federal Rule of Civil Procedure 25(d).

a free appropriate public education ("FAPE") to him; (2) that the DCPS denied Mathew a FAPE for only four and a half years; and (3) that the Individualized Education Program ("IEP") team may terminate Mathew's compensatory education services if they determine that he would no longer benefit from such services. Upon consideration of the entire record, the Court concludes that plaintiffs have failed to establish that the HOD must be reversed, and accordingly, the Court will grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

## I. *Background*

### A. *Facts*

Plaintiff Mathew Reid was born on September 18, 1988. Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ("Pls.' Stmt") ¶ 2. On June 6, 1998, Mathew was identified as a child with learning disabilities. Defendants' Statement of Material Facts as to Which There is No Genuine Issue, and Response to Plaintiffs' Statement of Material Facts ("Defs.' Stmt") ¶ 4. Specifically, Mathew has been diagnosed as having Attention Deficit Hyperactive Disorder ("ADHD") and a learning disability. Pls.' Stmt ¶ 13. Because of Mathew's disabilities, he is eligible for special education services pursuant to the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400 *et seq.* (2000). The dispute in this matter centers around exactly when Mathew's disabilities manifested themselves and should have been recognized and addressed by DCPS officials. In addition, plaintiffs challenge the remedy awarded to them for defendants' denial of a FAPE to Mathew.

Mathew has attended DCPS facilities for all school years relevant to this action except during the 1996–97 school year, when he attended school in California. Pls.' Stmt. ¶ 2; Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem.") at 9. In the fall of 1995, when Mathew was in the second grade, Ms. Reid asked the school counselor for help because she was concerned that Mathew was having problems learning. *Id.* ¶ 6. During the spring of 1996, Mathew's teacher met with Ms. Reid and the school principal to discuss Mathew's behavior, academic, and attention problems. *Id.* ¶ 8; Plaintiffs' Motion for Summary Judgment ("Pls.' Mot."), Exhibit ("Ex.") 1, Hearing Officer Determination ("HOD") at 6. At the end of the 1995–96 school year, Mathew was considered for retention in the second grade but because retention at the second grade level was a parental decision, Mathew was promoted to the third grade. *Id.* at 4; Pls.' Stmt. ¶ 7. In June 1998, Mathew was identified as a child with disabilities, and at the conclusion of the 1998–99 school year he was retained in the fourth grade. Pls.' Mot., Ex. 1, HOD at 2, 4. Once he was identified as a child with disabilities, an Individualized Education Program ("IEP") was developed and provided to Mathew. *Id.* On July 27, 2001, a hearing officer determined that Mathew had been "underserved since being identified as a child with a disability ... and placed him on a full-time special education program." *Id.* at 6. On December 18, 2001, Ms. Reid, through counsel, filed a request for a due process hearing. *Id.* at 2. Specifically, Ms. Reid complained about the DCPS' failure to "find"[2] Mathew's disabilities prior to June 1998, and requested compensatory education for Mathew for the 1992–93,

---

**2.** Pursuant to the IDEA, school officials have an affirmative duty to locate and evaluate disabled children who are in their school systems. *20 U.S.C. § 1412(a)(3).*

1993–94, 1994–95, 1995–96, 1996–97, 1997–98, 1998–99, 1999–2000, and 2000–01 school years. *Id.* at 2. Plaintiffs subsequently withdrew their claims for compensatory education for school years 1992–93, 1993–94, 1994–95, and 1996–97. *Id.* Their due process hearing was held on April 11, 2002, and May 14, 2002. *Id.* at 1.

B. *The Evidence Presented at the Due Process Hearing*

The hearing officer heard testimony from plaintiffs' three experts: Dr. Susan Van Ost, a psychologist with experience in assessing children with disabilities; Dr. Carol A. Kamara, a Speech and Language pathologist; and Dr. Sheila C. Isman, an educational consultant who provides services to parents who have children with disabilities. *Id.* at 3–4. All three experts testified that Mathew's disabilities should have manifested themselves in the early stage of his school enrollment and should have been identified by a qualified teacher. *Id.* However, because all the testimony was based on records and retrospective evaluations of Mathew, none of the experts could specify the precise time when Mathew's disabilities actually manifested themselves. *Id.* Dr. Ost testified that, according to the American Psychiatric Association, Mathew's combined ADHD and learning disabilities should have manifested the symptoms of the disorder by the age of seven. *Id.* Thus, according to Dr. Ost, Mathew's teachers should have suspected his disabilities as early as the second grade. *Id.* Dr. Kamara testified that

given her understanding of Mathew's speech and language impairment as of April 8, 2002, the impairment should have manifested itself in the early stages of his school enrollment and been observed by a qualified teacher. *Id.* at 4. As proof of when the disabilities manifested themselves, Dr. Kamara pointed out that Mathew's third grade report card from California and his performance on his May 1997 Stanford 9 test results "indicated a speech and language deficit." *Id.* Finally, Dr. Iseman testified that Mathew should have been evaluated for special education services when his teacher discussed his possible retention in the second grade at the conclusion of the 1995–96 school year. *Id.* In addition, according to Dr. Iseman, Mathew's third grade report card and test results from California should have strongly suggested that Mathew had learning disabilities. *Id.*

The DCPS did not call any witnesses to testify on its behalf. *Id.* at 3. Instead, the DCPS submitted two pieces of documentary evidence: a copy of a September 1, 2000, Mediation Agreement and a copy of a April 4, 2002, proposed settlement agreement that was entered into between plaintiffs and the DCPS.[3]

C. *The Hearing Officer's Decision*

In a decision issued July 15, 2002, the hearing officer made three findings of fact that are relevant to the current proceeding. First, he found that by failing to "find" that Mathew was in need of special

---

**3.** While not at issue in the case before the Court, previously on August 3, 2000, Ms.Reid had requested a Mediation Hearing. The request was settled through a Mediation Agreement dated September 1, 2000. Ms. Reid testified during the due process hearing on May 14, 2002, that when she signed the agreement she was not informed of her right to legal representation, that she asked for but did not understand what compensatory edu-

cation was, and that she thought the DCPS was acting in the best interest of her son at the time. Pls.' Mot., Ex. 1, HOD at 4. The hearing officer determined that when Ms. Reid signed the September 1, 2000, Mediation Agreement, she did not fully understand the agreement or what the term compensatory education meant. *Id.* at 6. The hearing officer did not address the April 4, 2002, proposed settlement agreement. *Id.*

education services for the 1998–99, 1999–2000, and 2000–01 school years, the DCPS denied Mathew a FAPE. *Id.* at 6. Second, he concluded that Mathew's "disabilities manifested themselves and should have been 'found' and evaluated as early as midway through the 1995–96 school year." *Id.* Finally, the hearing officer found that "[b]y failing to 'find' [that] Mathew [needed special education services] until midway through the 1995–96 School Year and during the 1997–98 School Year, [the] DCPS denied [a] FAPE to Mathew." *Id.* at 5–6.[4] The hearing officer ordered that Mathew receive one hour of compensatory education services for each day his FAPE had been denied as directed by Mathew's IEP team, for a total of 810 hours, in addition to the special education and related services already provided to Mathew pursuant to his IEP that was already in effect. *Id.* at 7. The order also allowed for periodic assessments of Mathew's progress by his IEP team and permits the IEP team to reduce or discontinue Mathew's compensatory education services if it determines that Mathew no longer needs or is no longer benefitting from the services. *Id.*

Plaintiffs argue that based on the evidence they presented at the hearing, Mathew should have been identified as a child with disabilities at the beginning of the 1995–96 school year rather than midway through that school year; that Mathew is entitled to one day of compensatory education services for each day he was denied a FAPE; and that the IEP team should not have been given authority to reduce or terminate Mathew's compensatory edu-

cation services. Pls.' Mem. at 1. Defendants request that the hearing officer's determinations be affirmed on the ground there is no legal basis for overturning the hearing officer's decision. Memorandum of Points and Authorities is [sic] Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Mem.") at 4.

## II. *Analysis*

### A. *Standard of Review*

#### 1. *Summary Judgment*

In reviewing the parties' motions for summary judgment, the Court must determine that there exists "no genuine issue as to any material fact and ... [that] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must review the facts in the light most favorable to the non-moving party in making this determination. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its determination, the Court evaluates the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...," that are presented to the Court. Fed.R.Civ.P. 56(c).[5] Once a motion for summary judgment has been properly made and supported by evidence, the non-moving party must then demonstrate the existence of a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.P. 56(e)). The existence of *"some*

---

4. The hearing officer also found that the DCPS failed to provide records from Noyes Elementary School as requested by Ms. Reid, that Mathew was disabled by a learning disability and ADHD, and that Mathew was identified as a child with a disability on June 9, 1998. Pls.' Mot., Ex. 1, HOD at 6.

5. Plaintiffs have filed a motion to strike the declaration of Judith Smith, which was filed with the defendants' reply to its summary judgment motion. Because the Court has not considered Ms. Smith's declaration in reaching its determination, it will deny this motion as moot.

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. Summary judgment is mandated if a party fails to establish an element essential to that party's case and on which that party will have the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

### 2. *Judicial Review Pursuant to the IDEA*

▆▆▆▆ The IDEA guarantees to children the right to receive a free, individually appropriate, public education. 20 U.S.C. § 1400(d)(1)(A). A free individually appropriate public education or a FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *See Board of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In reviewing challenges to a hearing officer's administrative decision made pursuant to the IDEA, courts must review the records of the administrative proceedings and may hear additional evidence at the request of a party. 20 U.S.C. § 1415(i)(2)(B). Courts have interpreted the Act's requirement that a reviewing court in an IDEA case "shall receive the records of the administrative proceedings[,]" 20 U.S.C. § 1415(i)(2)(B)(i), as requiring courts to give "due weight" to the administrative proceedings. *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034; *Leonard v.*

*McKenzie*, 869 F.2d 1558, 1561 (D.C.Cir. 1989); *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1988). As already indicated, a court is also free to consider additional evidence at the request of a party, 20 U.S.C. § 1415(i)(2)(B)(ii), and although it must give deference to the findings of the hearing officer, "less deference than is conventional" is required. *Kerkam*, 862 F.2d at 887. In determining whether to reverse a hearing officer's decision, the Court must engage in a two-step analysis. *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. First, it must determine whether the DCPS has complied with the procedural requirements of the IDEA.[6] *Id.* Second, it must determine whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits[.]" *Id.* at 207, 102 S.Ct. 3034. Once a determination is made that "these requirements are met, [the Court must conclude that] the State has complied with the obligations imposed by Congress and … can require no more." *Id.* However, "a party challenging [an] administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong…." *Id.* In the final analysis, the Court must "bas[e] its decision on the preponderance of the evidence [and must] grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). The Court must remain mindful that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the court[ ] to substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034.

### B. *Plaintiffs' Challenges to the Hearing*

---

**6.** Plaintiffs do not challenge the procedural adequacy of the hearing.

*Officer's Decision* [7]

■ As noted above, plaintiffs challenge three aspects of the hearing officer's decision. Each of these challenges will be addressed separately.

1. *When Should Mathew Have Been "Found" in Need of Special Education Services by the DCPS?*

Plaintiffs contend that the DCPS began denying Mathew a FAPE at the beginning of the 1995–96 school year, not midway through that school year as determined by the hearing officer. Pls.' Mem. at 10. Plaintiffs argue that the "hearing officer does not explain the basis for his mid year 'finding of fact' and ... [they] submit it is inconsistent with evidence summarized earlier in the [hearing officer's] Determination...." *Id.*

■ The IDEA places an affirmative duty on states to identify, locate, and evaluate all children with disabilities residing within their boundaries. 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.125 (2000). This duty, called the "child find" duty, is triggered when the school has reason to suspect a child has a disability, and has reason to suspect that special education services may be needed to address the disability. *Dep't of Educ., State of Hawaii v. Cari Rae S.*, 158 F.Supp.2d 1190, 1194 (D.Haw.2001) (citations omitted). The IDEA specifically states that an

educational agency shall be deemed to have knowledge that a child has a disability if—

(i) the parent of the child has expressed concern in writing (unless the parent is illiterate or has a disability that prevents compliance with the requirements contained in this clause) to personnel of the appropriate educational agency that the child is in need of special education and related services;

(ii) the behavior or performance of the child demonstrates the need for such services;

(iii) the parent has requested an evaluation of the child pursuant to section 1414 of this title; or (iv) the teacher of the child, or other personnel of the local educational agency, has expressed concern about the behavior or performance of the child to the director of special education of such agency or to other personnel of the agency.

20 U.S.C. § 1415(k)(8)(B)(i–iv).

■ Plaintiff argues that the evidence presented at the due process hearing demonstrated that the defendants should have recognized and then evaluated Mathew to assess his learning disabilities at the beginning of the 1995–96 school year. Pls.' Mem. at 10. However, the Court cannot agree that the evidence in the record supports that position. In *Cari Rae S.*, 158 F.Supp.2d at 1195, for example, the Court found "ample" evidence in the record indicating that the school was on notice of the student's disabilities. This evidence consisted of the student's mother's request for tutoring, as well as other "warning signs"

---

**7.** The Court rejects the plaintiffs' argument that the Court owes the hearing officer's decision little or no deference because he did "not appear to have applied the correct legal standard." Pls.' Opp'n at 14. Plaintiffs state that the hearing officer "fail[ed] to acknowledge the appropriateness standard, fail[ed] to explain why one hour of compensatory education for each day of FAPE denied is 'appropriate,' and fail[ed] to explain why a lump

sum award of five years ... is not appropriate." Pls.' Mem. at 33. However, the Court finds these allegations unsupported by the record and will therefore apply the standard of "due weight" to the hearing officer's decision pursuant to 20 U.S.C. § 1415(i)(2)(B)(i), a requirement which the Supreme Court held is implied in the statute. *Rowley* 458 U.S. at 206, 102 S.Ct. 3034; *see also Leonard,* 869 F.2d at 1561; *Kerkam,* 862 F.2d at 887.

including: the child's class ranking (she was ranked at the bottom of her class), her attendance record (she was absent seventy-nine times during one academic year), behavioral referrals and disciplinary actions by her teachers, and symptoms of drug use. *Id.* Here, the evidence was far from "ample." The evidence in the record consists of the testimony of three expert witnesses who all evaluated Mathew after his learning disability diagnosis was made and three specific instances when Ms. Reid had contact with school officials regarding Mathew. The testimony from the experts did not definitively establish that Mathew's disabilities should have been detected at the time alleged by the plaintiffs, as all the witnesses did not evaluate Mathew until at least four years after that point in time. And it is significant that all of the witnesses merely testified that Mathew's disabilities "should" have manifested themselves during the 1995–96 school year. Pls.' Mot, Ex. 1, HOD at 3–4. Regarding Ms. Reid's contact with school officials, two of those encounters clearly do not give rise to a finding that Mathew's disabilities should have been recognized at the beginning of the 1995–96 school year. The retention discussion between the school officials and Ms. Reid took place at the end of that school year and in no way establishes that Mathew's disabilities had manifested themselves nine months earlier. Pls.' Stmt ¶ 7. Ms. Reid's discussion with Mathew's teacher and the principal concerning Mathew's lack of progress, possible retainment, and behavioral problems did not occur until the spring of 1996, or near the end of the school year. *Id.* ¶ 8; Pls.' Mot., Ex. A, HOD at 6. Again, this discussion does not prove that Mathew's disabilities manifested themselves at the beginning of the 1995 96 school year. Thus, because neither of these two discussions occurred during the fall of the 1995–96 school year, neither supports plaintiffs' argument that school officials should have identified Mathew's disabilities at that time.

■ The only remaining question then is whether Ms. Reid's request for help for Mathew during the fall of 1995–96 school year should have put defendants on notice of Mathew's disabilities, triggering the "child find" duty. *Id.* ¶ 8. The Court concludes that this oral request was not alone sufficient to trigger this duty. For example, the student's mother in *W.B. v. Matula,* 67 F.3d 484, 488 (3d Cir.1995), met with the principal of the school to discuss concerns about her child's behavioral problems, and also met with her child's teacher and other school officials to discuss his behavioral and academic problems. *Id.* However, in addition to these meetings, the child's teacher reported to W.B. and other school officials a variety of disruptive classroom behaviors committed by the child, she informed W.B. that her child might have ADHD, and W.B. specifically asked the school to refer her child for an evaluation for special education services. *Id.* All of this evidence led the Court to conclude that the defendant "had an ongoing obligation to discharge the 'child find' duty." *Id.* at 501. Here, while Ms. Reid specifically asked for help from school officials for Mathew's behavioral and academic problems, she did not fulfill the statutory requirements of 20 U.S.C. § 1415(k)(8)(B)(i-iv). Specifically, there is no evidence in the record, nor do plaintiffs assert that Ms. Reid expressly requested an evaluation. *Id.* § 1415(k)(8)(B)(iii). In addition, unlike what occurred *Matula,* there is no evidence that Mathew's teacher expressed concern about his performance or behavior to agency personnel. *Id.* § 1415(k)(8)(B)(iv).

Similarly, in *Alex K. v. Wissahickon Sch. Dist.,* No. CIV.A.03–854, 2004 WL 286871, at *8 (E.D.Pa. Feb.12, 2004), the

Court held that expressions of concern conveyed by parents to school officials about their child's educational performance did not trigger the "child find" duty. There, prior to enrolling the plaintiff child in a private school, the plaintiff's parents met with a public school principal. *Id.* at *3. During this meeting the plaintiff's parents informed the principal that the plaintiff might have learning difficulties and they were looking into potential placements for plaintiff. *Id.* The principal informed plaintiff's parents that if they would like the school district to evaluate the plaintiff and consider him for special education, they should put the request in writing. *Id.* Plaintiff's parents then enrolled him in private school in 1997, and subsequently requested tuition reimbursement and compensatory education from the school district in 2001. *Id.* Plaintiff sued the school district for failing to "find" and evaluate the child plaintiff for special education services for the five years following their revelation to the principal that plaintiff had learning disabilities. *Id.* at *1. The Court held that the discussion between the parents and the principal alone was insufficient to trigger the "child find" duty and therefore the school district was held not to have been on notice of the child's disability until the parents requested an evaluation in writing at the beginning of the 2001 school year. *Id.* at *8. *See also Evans v. Dist. Number 17 of Douglas County, Neb.,* 841 F.2d 824, 828 (8th Cir.1988) (parent's expression of concern did not trigger the procedural requirements of the IDEA which requires written notice to initiate a change of placement). Here, Ms. Reid did not express her concern about Mathew's performance in writing or specifically request an evaluation pursuant to § 1414 as the statute requires. 20 U.S.C. § 1415(k)(8)(B)(i), (iii). These findings, coupled with the plaintiffs' experts' inability to definitively pinpoint when Mathew's disabilities would have manifested themselves leads the Court to the conclusion that the evidence in the record does not support plaintiffs' assertion that defendants were on notice of Mathew's disabilities at the beginning of the 1995–96 school year. Thus, the Court cannot disturb the hearing officer's determination that the DCPS should have found that Mathew was in need of special education services midway through the 1995–96 school year.

 Plaintiffs also argue that because defendants failed to present any evidence at the due process hearing, the hearing officer erred in not directing a finding in plaintiffs' favor on the question of whether a FAPE was provided to Mathew during the first half of the 1995–96 school year. Plaintiffs' Opposition to Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment and in Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Opp'n") at 15. This argument misconstrues the nature of compensatory education. Compensatory education is an equitable remedy, *Parents of Student W. v. Puyallup Sch. Dist.,* 31 F.3d 1489, 1497 (9th Cir.1994), and equitable remedies are flexible and capable of adjustment and reconciliation between the public interest and private needs. *California v. American Stores Co.,* 495 U.S. 271, 284, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990). Therefore, the hearing officer was obligated to provide an equitable remedy for Mathew and not mechanically direct a verdict in his favor solely because the defendants failed to present any evidence. Here, the hearing officer considered the testimony and evidence submitted to him, which included the testimony of plaintiffs' experts, and determined that the denial of a FAPE did not commence until the middle of the

1995–96 school year. Plaintiffs acknowledge that there was no requirement that the hearing officer credit plaintiffs' experts' testimony, Pls.' Mem. at 31, notably in light of the fact that the evidence they presented was not conclusive. Therefore, the Court affirms the hearing officer's determination that the DCPS did not fail to find that Mathew was in need of special education services until midway through the 1995–96 school year.

### 2. Whether the Remedy Awarded by the Hearing Officer was Appropriate?

Plaintiffs challenge the hearing officer's remedy that was awarded for the denial of Mathew's FAPE. In general, compensatory education has been determined to be an appropriate remedy once it has been shown that a child is entitled to coverage under the Act and the child was denied that coverage. *Harris v. District of Columbia*, No. CIV.A.91–1660, 1992 WL 205103, at *3 (D.D.C. Aug.6, 1992). The hearing officer ordered the DCPS to compensate Mathew for its denial of a FAPE with one *hour* of compensatory education for every school *day* during the four and a half year period of denial, for a total of 810 hours.[8] Pls.' Mot., Ex. 1, HOD at 7. Plaintiffs argue that Mathew should have been awarded one *day* of compensatory education for each *day* he was denied a FAPE. Pls.' Mem. at 1. However, the Court finds that *plaintiffs* have failed to establish that they are entitled to this relief for several reasons.

Plaintiffs ask the Court to apply an incorrect legal standard in assessing the hearing officer's award. Plaintiffs appear to be asking the Court to apply something akin to a potential maximizing standard, rather than the "some educational benefit" standard. Pls.' Opp'n. at 14. Plaintiffs state that "compensatory education should . . . be provided in a form that allows it to be used to assure that Mathew Reid can make up for what he lost, to reach the levels that he would have reached but for defendants' failure to provide [a] FAPE in the first instance." *Id.* Plaintiffs argue that the hearing officer should have based his decision on what level of compensatory education would help Mathew achieve the level of attainment he would have achieved if a FAPE had not been denied. *Id.* However, as required by the Supreme Court in *Rowley*, 458 U.S. at 195, 201, 102 S.Ct. 3034, the District of Columbia Circuit applied the "some educational benefit" standard in *Kerkam*, when it reversed a district court decision that applied a potential maximizing standard. 862 F.2d at 889. There, the parents of a severely disabled child objected to a DCPS decision to place the child into a day program located in the District of Columbia rather than leaving him at a private school and residential program in the area from which plaintiffs had recently moved. *Id.* at 886. The parents obtained a due process hearing at which the hearing officer ultimately found that the DCPS day program placement combined with additional special education services was appropriate. *Id.* The parents appealed and the district court reversed the hearing officer's decision despite not finding fault with the testimony presented during the due process hearing. *Id.* at 888. The Circuit Court stated:

> The [district] court's unspoken premise appears to have been that since [the child] was making progress at [the residential program] it followed that any inferior placement was not appropriate.

---

8. The hearing officer multiplied 4.5 (the number of years Mathew was denied FAPE) by 180 (the number of school days in each year) to reach the total of 810 hours. Pls.' Mot., Ex.1, HOD at 7.

Appealing as that view must be, it is inconsistent with the "some educational benefit" standard of *Rowley* and is strongly suggestive of reliance on the potential-maximizing standard that *Rowley* forbids.

*Id.* at 889; *see also Angevine,* 959 F.2d at 295 (reversing a district court decision because the district court improperly shifted the burden to the hearing officer and applied a potential maximizing standard).

 The some educational benefit standard requires that a disabled child be provided with a "basic floor of opportunity." *Rowley,* 458 U.S. at 200–201, 102 S.Ct. 3034. In determining what constitutes a "basic floor of opportunity," the Supreme Court explicitly rejected a bright-line rule but instead required courts to make that determination on a case-by-case basis, taking into account the particular needs of the disabled child. *Id.* at 201, 102 S.Ct. 3034. The Court's concern here is the lack of any evidence concerning why Mathew's needs are not now being addressed and why additional special educational services are necessary to ensure that Mathew is achieving some educational benefit. Plaintiffs' position is that Mathew's current needs are relevant only to the question of what defendants must provide now and that compensatory education should depend on what he has already been denied. Pls.' Opp'n at 14. Therefore, plaintiffs opine that the DCPS "owes" Mathew five yeas of compensatory education. *Id.* However, plaintiffs fail to offer proof regarding why the hearing officer's award is "inappropriate" to achieve what is required by the Act, *i.e.,* a basic floor of opportunity and "access to specialized instruction and related services which are individually designed to provide educational benefit to [Mathew]." *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034.

 Under the IDEA, when a public school system fails to provide adequate services to a handicapped child, the court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1439(a)(1). The reviewing court has broad discretion in determining what is appropriate based on the circumstances of each case. *School Committee of Burlington v. Massachusetts Department of Education,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). While it is true that there is no limit to relief under the IDEA, *see Matula,* 67 F.3d at 501, "[t]here is [also] no obligation to provide ... day-for-day compensation for time missed." *Puyallup,* 31 F.3d at 1497. While plaintiffs acknowledge that there is no set framework to guide the Court in determining what amount of compensatory education is appropriate, Pls.' Opp'n at 2, they state that "under the circumstances of this case an award of five years compensatory education is appropriate to make up for five years of [a] FAPE denied to Mathew Reid." *Id.* at 3. However, as noted above, plaintiffs fail to justify this assertion with facts regarding the specific circumstances of this case. Rather, plaintiffs argue that because Mathew is performing below grade level a greater award of compensatory education is required. *Id.* at 14. However, plaintiffs fail to specifically explain why day for day compensation is the *only* way to remedy Mathew's situation. Plaintiffs state that a child, like Mathew, who has fallen behind requires the equivalent amount of time to "unlearn" bad habits picked up or he will never be able to get back what was lost. Pls.' Mem. at 26–27. Plaintiffs rely on three cases, which are not binding on this Court, as support for their position that the appropriate remedy for Mathew is day-for-day compensatory education. The Court is not persuaded that these cases call for that relief in this case.

In *Hammond v. District of Columbia,* No. CIV.A.99–1723, 2001 WL 34360429, at *1 (D.D.C. Mar.1, 2001), the Court primarily addressed the question of whether a claim for relief under the IDEA was barred by the three-year statute of limitations of D.C.Code § 12–301(8) (2001). In finding that the claim was not time barred and relief was appropriate, the Court made a lump sum compensatory education award equal to the time a FAPE was denied. *Id.* at *6. However, the Court specifically stated that the reason it granted such relief was, at least in part, based on the fact that the defendants "voiced no objection to [p]laintiffs' request for compensatory education ... [and][a]ccordingly, the Court awarded plaintiffs a lump sum grant." *Id.* Here, the defendants have voiced an objection to the specific relief requested by the plaintiffs.

Similarly, in *Harris,* 1992 WL 205103, at *4, the Court did not explain why it granted a lump sum of compensatory education equivalent to the amount of time a FAPE had been denied. There, the hearing officer held that he was without valid statutory authority to award the plaintiffs compensatory education. *Id.* at *1. Rejecting the hearing officer's conclusion, the Court held that hearing officers have such authority when a FAPE has been denied. *Id.* at *3. The defendants had argued that compensatory education was not available to the plaintiff because it was only available when a "gross violation" of the IDEA is established, and that the issue was not ripe for adjudication because it was unclear that the plaintiff would actually need compensatory education. *Id.* at *3–4. Because they did not believe an award of compensatory education could be granted at all, the defendants in *Harris* did not address what amount of compensatory education they thought would be appropriate. The Court awarded the plaintiff compensatory education in the amount requested without explaining why that amount was appropriate. *Id.* Here, what is at issue is whether the actual amount of compensatory education granted is appropriate, not whether compensatory education is appropriate at all. Therefore, *Harris* is not useful to the analysis the Court is required to conduct in this case.

The third case plaintiffs rely on is also distinguishable from this case. In *Everett v. Santa Barbara High Sch. Dist.,* Nos. 00–55647, 00–56338, 28 Fed.Appx. 683, 684 (9th Cir. Jan.11, 2002), the Ninth Circuit affirmed the district court's decision granting compensatory education equal to the time a FAPE was denied. There, although the plaintiff was not seriously emotionally disturbed, the school district had placed the plaintiff in a class for seriously emotionally disturbed students. *Id.* at 684. The school district also failed to provide the plaintiff with "educational benefit ..." while he "was on home/hospital instruction[,]" by providing a regular teacher in lieu of a special education teacher during part of that period of instruction, and failing to provide a teacher at all for two months during that period. *Id.* The *Everett* Court specifically stated that "this failure to provide *any* special education instruction for a significant segment of the year *compels* the conclusion that the services were not reasonably calculated to provide educational benefit." *Id.* (emphasis added). The facts before the *Everett* Court are distinctly different from the facts currently before this Court. The school district in *Everett* placed the student in a setting that was grossly inappropriate, provided him with someone unqualified to provide special education services, and then denied him education services altogether. *Id.* Here, Mathew has been receiving special education services for most of the five year period at issue, since he was diagnosed at the end of the 1997–98

school year. Pls.' Mot., Ex. 1, HOD at 2. While the hearing officer determined that Mathew was underserved after being diagnosed and placed Mathew on a full-time special education program, *id.* at 6, plaintiffs do not provide evidence that the "underserved" determination amounted essentially to the total denial of a FAPE as was the case in *Everett.*

The Court finds *Wingfield v. District of Columbia*, No. 00–121, slip op. at 1 (D.D.C. Dec. 7, 2000), more analogous to the present situation. In *Wingfield*, the plaintiff child and his mother brought an action against the DCPS for failing to provide the child with special education services. *Id.* As in this case, whether plaintiff was entitled to the services, whether those services were in fact denied, and the fact that the child was entitled to some compensatory education were not in dispute. *Id.* at 2. And like the situation here, the parties disagreed on how much compensatory education was an appropriate remedy. *Id.* The child in *Wingfield* was denied a total of 320 hours of special education services and the parents requested one hour for every hour the child was denied special education services. *Id.* at 9–10. The plaintiffs relied on the *Harris* decision, 1992 WL 205103, among other cases, as support for their argument that the child should be awarded an amount of compensatory education in an amount commensurate with the time he was denied a FAPE. *Id.* at 10–11. The Court explicitly rejected the plaintiffs' position, stating that while "[i]n some cases an hour-for-hour remedy may be appropriate . . . [the] Court must weigh the evidence, the administrative record, and the hearing officer's decision, and craft a remedy appropriate *for this case.*" *Id.* at 11 (emphasis added). In crafting "the best possible remedy," the Court examined the special education services currently being provided to the child and the recommendations of officials as to what

would be most beneficial to the child. *Id.* at 8, 12. The Court found that because the child was already receiving a large amount of special education services pursuant to his current IEP, less than hour-for-hour compensation was appropriate to achieve an educational benefit. *Id.* at 9, 12–13. Based on the amount of special education the child was receiving, the Court awarded forty hours of additional special education services. *Id.* at 13. Like the child plaintiff in *Wingfield*, Mathew is currently receiving special education services because he is enrolled in a full time special education program. Pls.' Mot., Ex. 1, HOD at 2. And plaintiffs, who have the burden in this case, have failed to provide the Court with a copy of Mathew's current IEP and therefore the Court is unable to assess whether the services he is already receiving are inadequate to compensate for the prior denial of FAPE, which might justify a larger compensatory education award. Therefore, the Court affirms the hearing officer's decision that 810 hours of compensatory education is the appropriate remedy for the prior denial of a FAPE by the DCPS.

3. *Whether the IEP team's Authority and Discretion to Reduce or Discontinue the Compensation was Appropriate?*

Plaintiffs also challenge the hearing officer's ruling that Mathew's IEP team has the authority to "reduce[ ] or discontinue[ ] Mathew's compensatory education if the team concludes that Mathew no longer needs or is not benefitting from this compensatory education." Pls.' Mot., Ex. 1, HOD at 7. Plaintiffs argue that "to give defendants final authority over the use of the award that their acts and omissions brought about is illogical." Pls.' Opp'n at 15. However, this delegation of authority is consistent with the purpose

and structure of the IDEA. The IDEA sets out a series of procedural safeguards for children and their parents to ensure that, as the plaintiffs put it, "the fox [is not] in charge of the chicken coop." Pls.' Mem. at 10. The primary vehicle for delivering a FAPE to a student with a disability is through the IEP team, which designs an IEP specific to each child's needs. *G. ex rel R.G. v. Fort Bragg Dependent Sch.*, 324 F.3d 240, 243 (4th Cir. 2003). The IDEA provides safeguards "designed to ensure that the parents ... of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to those decisions." *Id.* at 243 (quoting *MM ex rel DM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 527 (4th Cir.2002) (internal citations omitted)). Parents are permitted to be a part of the IEP team, 20 U.S.C. § 1414(d)(1)(B)(i), as well as other individuals "who have knowledge or special expertise regarding the child" at the "discretion of the parents." 20 U.S.C. § 1414(d)(1)(B)(vi). Also, parents receive written notice before any changes in the IEP are made. 20 U.S.C. § 1415(b)(1)(C). And if the parents are unhappy with the decisions of an IEP team, and their objections are not heeded, they may request a due process hearing. 20 U.S.C. § 1415(f). These safeguards are adequate to ensure that the IEP team acts in Mathew's best interest. Therefore, the Court finds that the hearing officer's decision to place reevaluation authority of Mathew's needs and discretion to terminate his special education services if they are no longer beneficial with the IEP team is logical and not prohibited by the Act.

### III. *Conclusion*

In sum, the Court affirms the decision of the hearing officer in all respects. This is not a case where a child is being denied educational services he desperately needs. This is also not a case where the DCPS has objected to providing a needy child with special education services and is challenging an award of any amount of compensatory education. Rather, defendants are willing to provide Mathew compensatory education for the time a FAPE was denied as instructed by the hearing officer. This is, therefore, a case where plaintiffs are dissatisfied with the amount of compensatory education awarded by the hearing officer, but have failed to justify why more is necessary. While Mathew was denied a FAPE for a significant portion of his educational experience, "[o]nce a child has missed the benefit of education which was designed to be given at a specific time ... the Court [or hearing officer] must look to the realities of the situation, and craft the best possible remedy." *Wingfield*, No. 00-121, slip op. at 11–12. Without evidence supporting plaintiffs' assertions, the Court cannot find that anything less than what is required by the IDEA has been provided March 16, 2004 and therefore the Court is without a basis for reversing the hearing officer's decision. Accordingly, the Court will grant the defendant's motion for summary judgment.

**SO ORDERED** on this 16th day of March, 2004.[9]

### *ORDER*

In accordance with the Memorandum Opinion that is being issued contemporaneously with the filing of this Order, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment [# 8] is denied. It is further

---

**9.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

**ORDERED** that Defendants' Motion for Summary Judgment [# 11] is granted. It is further

**ORDERED** that Plaintiff's Motion to Strike the Declaration of Judith Smith [# 17] is found to be moot.

**SO ORDERED** on this 16th day of March, 2004.