# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| YVONNE STANTON,<br>parent and next friend of K.T., a minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 09-988 (ESH)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Yvonne Stanton, as mother and guardian for K.T., seeks review of an administrative decision denying her request for a compensatory education award from the District of Columbia Public Schools ("DCPS").  Plaintiff alleges that DCPS violated the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), which requires states receiving federal financial assistance to identify, locate, and evaluate children with disabilities and to provide them with a free appropriate public education ("FAPE").  The parties agree that defendant denied K.T. a FAPE by failing to provide him with the services required by his Individualized Education Program ("IEP").  However, they disagree over whether the Hearing Officer appropriately rejected plaintiff's claim for compensatory education and whether plaintiff sufficiently supported her proposed award.  For the reasons herein, the Court finds that the Hearing Officer erred by ignoring DCPS's failure to provide K.T. with counseling and tutoring services from October 2007 through February 2008 and improperly rejected plaintiff's

claim for a compensatory award. However, because of the insufficiency of the record, the Court will remand the case for further proceedings.

## BACKGROUND

K.T., a sixteen-year-old boy, has been diagnosed with a "mixed anxiety depressive disorder" and a learning disability. (Pl.'s Statement of Material Facts ["SMF"] ¶ 2; Def.'s SMF ¶ 1.) In November 2006, a multi-disciplinary team[1] created an IEP that placed K.T. in a "combination general education/special education setting," required that he receive twenty hours of specialized instruction and five hours of counseling per week, and set goals for him in language arts, math and mental health. (*Id.* ¶¶ 3-4; Administrative Record ["AR"] at 95-101.) In October 2007, K.T. began attending Ballou Senior High School ("Ballou"). (Pl.'s SMF ¶ 1; Def.'s SMF ¶ 5.) For reasons that remain unclear, Ballou placed K.T. in a general education curriculum and failed to provide him with any of the specialized instruction and counseling required by his IEP. (Def.'s SMF ¶ 6; Pl.'s Response to Def.'s SMF ¶ 2.)

On February 13, 2008, a multi-disciplinary team met and, without plaintiff's involvement, amended K.T.'s IEP. (Pl.'s SMF ¶ 4.) The team held another meeting on February 15th, which plaintiff attended. (*See id.* ¶¶ 3-4.) At this meeting, K.T.'s teachers admitted that they had not implemented the November 2006 IEP and had been unaware of its existence. (*Id.* ¶ 4; Def.'s Response to Pl.'s SMF ["Def.'s Response"] ¶ 4.) The Ballou staff, which apparently was confused because another student at the school had the same name as K.T., provided plaintiff with an inaccurate report on K.T.'s grades and attendance. (*See* Pl.'s SMF ¶¶ 7-8;

---

[1] Under the IDEIA, a multi-disciplinary team, also called an "IEP Team," *see* 20 U.S.C. § 1415(f)(1)(B)(i), develops the IEP for the disabled student. *Jones ex rel. A.J. v. District of Columbia*, 646 F. Supp. 2d 62, 64 (D.D.C. 2009).

Def.'s Response ¶¶ 7-8.) At the meeting, DCPS denied plaintiff's request for a compensatory education award. (Pl.'s SMF ¶ 6; Def.'s Response ¶ 6.)

On February 19, 2008, plaintiff filed a due process complaint with the DCPS, alleging that it had failed to implement the IEP and that K.T. was entitled to a compensatory education award. (*Id.* ¶ 9.) On March 17, plaintiff filed a second complaint alleging that the February 13th meeting was not a "proper MDT meeting," and therefore, that DCPS had failed to "develop an appropriate IEP." (*Id.*) The two complaints were consolidated, and a due process hearing was set for April 7.

At the hearing, DCPS conceded "all issues raised by the plaintiff, except that of compensatory education." (Def.'s SMF ¶ 13.) Plaintiff called Stephanie Denzel, an educational advocate with a masters in special education and a doctorate in psychology, to propose a compensatory education award. (AR, Hr'g Tr. ["Hr'g Tr."] at 17-18.) Denzel testified that she had reviewed K.T.'s records, attended the multi-disciplinary team meeting on February 15th, and met with both K.T. and his mother. (*Id.* at 19, 21-22.) In addition to introducing evaluations of K.T.'s reading, writing, and math skills (AR 102-24), Denzel testified that K.T. read at a level between third and fourth grade and could perform basic mathematical operations at a third grade level. (Hr'g Tr. at 20-21.) This placed K.T. five to six years behind the level of his peers. (*Id.* at 21.)

Denzel argued for an award of 372 hours of one-on-one tutoring, including two hours a week for math, two hours for reading and two hours for writing for sixty-two weeks. (*Id.* at 24-31.) She pointed out that K.T. could not "demonstrate 8 out of the 11 objectives listed in his 2006 IEP" and argued that the compensatory award would allow him to "ma[k]e up that ground" and catch up "so that he can move forward successfully accumulating credits." (*Id.* at 25-28.)

Defendant "offered no cross examination or evidence to rebut" Denzel's testimony. (Pl.'s SMF ¶ 16; Def.'s Response ¶ 16.) Indeed, defendant offered no assistance in calculating an appropriate compensatory education award, stating only that "we'll leave them to their proofs . . . ." (Hr'g Tr. at 15.)

On April 17, the Hearing Officer denied plaintiff's request for compensatory education. (AR at 1-8.) In his decision, the Officer made no mention of Ballou's failure to implement K.T.'s IEP from October 2007 through February 2008. (*See id.*) Indeed, the Officer apparently believed K.T. was only denied a FAPE between the February 13th meeting and the filing of plaintiff's complaint "two weeks later." (*Id.* at 5-6 ("[Plaintiff] failed to prove a nexus between the violation proven, the failure to develop an appropriate IEP on February 13, 2008, and the proposed compensatory education plan . . . .").) The Officer concluded that this brief deprivation could not have resulted in K.T. being deprived of "460 hours of instruction," and that therefore plaintiff had not established the number of hours DCPS had failed to provide. (*Id.*) The Officer determined that plaintiff failed to meet its "burden of establishing the type and amount of compensatory services" needed to "compensate the student for the services that were denied." (*Id.* at 5-6.) Plaintiff submitted a motion for reconsideration on April 25, 2008, which, after thirty days, was deemed to have been denied. (*Id.* ¶¶ 19-20.) Plaintiff filed this case on May 27, 2009.

**ANALYSIS**

**I. REVIEW UNDER THE IDEIA**

Under the IDEIA, a party aggrieved by a hearing officer's decision may bring a civil action challenging it. 20 U.S.C. § 1415(i)(2)(A). A court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii)

basing its decision on the preponderance of the evidence, shall grant such relief as [it] deems appropriate." *Id.* § 1415(i)(2)(C). If neither party introduces additional evidence, a motion for summary judgment acts as a motion for judgment based on the evidence in the record. *Brown ex rel. E.M. v. District of Columbia*, 568 F. Supp. 2d 44, 50 (D.D.C. 2008). The party challenging the administrative decision carries the burden of "persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). A court must give "'due weight'" to the hearing officer's determinations and "may not substitute its own notions of sound educational policy for those of the school authorities." *S.S. v. Howard Road Academy*, 585 F. Supp. 2d 56, 63-64 (D.D.C. 2008) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).

However, less deference is to be accorded to the hearing officer's decision than would be the case at a conventional administrative proceeding. *Reid*, 401 F.3d at 521. The Court is "obligated by the IDE[I]A to ensure that relief set forth in the administrative award was 'appropriate[.]'" *Id.* Thus, the Court may not simply "rely on the hearing officer's exercise of discretion"; a decision "'without reasoned and specific findings deserves little deference.'" *Id.* (quoting *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991)). Where the administrative record lacks "pertinent findings" and where neither party requested "consideration of additional evidence, the [Court] may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings." *Id.* at 526 (quoting *JH ex rel. JD v. Henrico County Sch. Bd.*, 395 F.3d 195, 198 (4th Cir. 2005)).

## II. DENIAL OF COMPENSATORY EDUCATION AWARD

### A. Deference to the Hearing Officer

A decision made by a hearing officer without "reasoned and specific findings deserves little deference." *Id.* at 521 (quoting *Kerkam*, 931 F.2d at 87). The Hearing Officer made his decision in this case without making any findings based on the tests, evaluations and testimony submitted by plaintiff. (AR at 5-6.) He concluded that K.T. had only been denied a FAPE for the two weeks between the meeting on February 13th and the filing of the initial complaint on February 27th.[2] (*Id.* ("Certainly there was insufficient time between the IEP meeting on February 13th and the filing of the first *Complaint* two weeks later for Petitioner to have missed 460 hours of instruction.").) Thus, the Officer ignored defendant's concession that, beginning in October 2007, it failed to provide K.T. with the services required by his IEP. Although defendant conceded the issue, the Officer "found nothing in the record" to support the claim that plaintiff had missed 460 hours of instruction and ignored much of plaintiff's evidence. (*Id.*) Because of this factual error, the Officer ignored the vast majority of the evidence submitted by plaintiff and totally failed to make reasoned or specific findings. His decision therefore deserves little deference from the Court.

---

[2] The Officer also found that plaintiff's proposal was based on K.T.'s lack of progress since his 2006 evaluation, and that plaintiff had failed to offer "credible evidence that DCPS failed to provide services" since November 2006. (AR at 5.) Thus, the Officer found that the 2006 evaluation was not "relevant" in determining the effect of the FAPE denial in February 2008. (*See id.*) However, the Officer did not consider whether the 2006 evaluation was relevant in determining the effect of the FAPE denial that began in October 2007. *See, e.g.*, *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt* (*Nesbitt II*), No. 06-CV-293, 2009 WL 3853202, at *5 (D.D.C. Nov. 18, 2009) (2002 psychological evaluation could "allow for an estimation" of student's cognitive and educational level in 2003).

### B. Compensatory Education Awards

The IDEIA gives courts "broad discretion" to award compensatory education as an "equitable remedy" for students who have been denied a FAPE. *Reid*, 401 F.3d at 522-23 (quoting *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15-16 (1993)). The "ultimate award" must "provide the educational benefits that likely would have accrued from special education services" that the school district "should have supplied in the first place." *Id.* at 524. A compensatory award must "rely on individualized assessments" after a "fact-specific" inquiry. *Id.* "In formulating a new compensatory education award, the hearing officer must determine 'what services [the student] needs to elevate him to the position he would have occupied absent the school district's failures.'" *Anthony v. District of Columbia*, 463 F. Supp. 2d 37, 44 (D.D.C. 2006) (quoting *Reid*, 401 F.3d at 527).

A "material failure" to implement an IEP denies the student his or her right to a FAPE. *S.S.*, 585 F. Supp. 2d at 71. Defendant therefore concedes that it denied K.T. a FAPE by admitting that it inappropriately created the February 2008 IEP (*see* Tr. at 15) and failed to implement the 2006 IEP, beginning in October 2007. (Def.'s Response to Pl.'s SMF ¶ 4.) Defendant argues, however, that plaintiff did not introduce sufficient evidence to be eligible for an award under *Reid* (Def.'s Mot. at 8-9), and that the compensatory education plan had "*nothing to do with K.T.'s current educational needs.*" (Def.'s Reply to Pl.'s Opp'n at 3.) Even if plaintiff is eligible for an award, defendant argues that she did not introduce sufficient evidence to be awarded the hours she seeks as compensatory education. (Def.'s Mot. at 10-11; AR at 5.)

#### 1. Plaintiff is eligible for a compensatory education award

Defendant suggests that plaintiff is not eligible for a compensatory education award because she has not introduced sufficient evidence to satisfy *Reid*. (Def.'s Mot. at 8-9.) In *Reid*,

the Court of Appeals rejected "mechanical hour-counting," and emphasized that an award must be "*designed to meet* [the student's] *unique needs*." *Reid*, 401 F.3d at 524 (quoting 20 U.S.C. § 1400(d)(1)(A)). *Reid* requires that any award "rely on individualized assessments" and be "*reasonably* calculated" to provide the educational benefits that "*likely* would have accrued" from the services the school should have provided. *Id.* (emphasis added). Thus, *Reid* overturned a decision that simply awarded one hour of compensatory instruction for "each hour without [a] FAPE." *Id.* at 523-24. However an award created with the "aid of a formula" is not "'*per se invalid*,'" as "psycho-educational evaluations" and "observations" of the student and of classes at the student's new high school, may be a sufficient basis for "an individually-tailored assessment." *See Brown*, 568 F. Supp. 2d at 53-54. *See also Friendship Edison v. Nesbitt* (*Nesbitt I*), 532 F. Supp. 2d 121, 123 (D.D.C. 2008) (formula-based award may be acceptable if it "represents an individually-tailored approach to meet a student's unique prospective needs").

Defendant argues that the evaluations of K.T. were flawed because they addressed his progress since 2006 rather than October 2007, and that plaintiff did not submit sufficient evidence to satisfy *Reid*. (Def.'s Mot. at 8-10; Def.'s Reply at 2.) Defendant therefore suggests that any award would violate *Reid*. (Def.'s Opp'n at 10-11.) However, plaintiff presented a significant number of "individualized assessments" of K.T. and, through Denzel, sufficiently established that K.T. was entitled to an award. (Pl.'s Mot. at 7.) Although the 2006 evaluations do not "exactly" reveal K.T.'s level in November 2007, they "come[] very close and could . . . allow for an estimation of where [he] was functioning in 200[7]." *Nesbitt II*, 2009 WL 3853202, at *5. Plaintiff also submitted evaluations of K.T.'s skills from February 2008 that illustrated his failure to advance. (AR at 102-24.) Plaintiff based her proposal on Denzel's testimony, the evaluations of K.T.'s progress toward eight of the eleven objectives listed in his 2006 IEP (Hr'g

Tr. at 25), his other school records, and interviews with plaintiff and K.T. (*Id.* at 19.) None of this evidence was contradicted or questioned by the defendant. Even if plaintiff failed to evaluate all of K.T.'s objectives and failed to show what hypothetical level K.T. might have reached had he received tutoring and counseling, its proposal still relied on "individualized assessments." *Reid*, 401 F.3d at 524. Moreover, despite its arguments now, defendant did not raise any objection to it at the hearing, but, rather, did no more than concede that it had deprived K.T. of a FAPE.

*Reid* certainly does not require plaintiff to have a perfect case to be entitled to a compensatory education award. Once a plaintiff has established that she is entitled to an award, simply refusing to grant one clashes with *Reid*, which sought to eliminate "cookie-cutter" awards in favor of a "qualitative focus on individual needs" of disabled students. *See Reid*, 401 F.3d at 524, 527. A hearing officer may "provide the parties additional time to supplement the record" if she believes there is insufficient evidence to support a specific award. *See Nesbitt I*, 532 F. Supp. 2d at 125. Choosing instead to award plaintiff *nothing* does not represent the "qualitative focus" on K.T.'s "individual needs" that *Reid* requires. Thus, the Court cannot simply "reject[] any award of compensatory education services[.]"[3] *See Brown*, 568 F. Supp. 2d at 54.

---

[3] Another judge on this Court affirmed a hearing officer's refusal to grant an award where plaintiff failed to "establish the type and amount of compensatory services owed to him by DCPS in order to compensate for the services he was denied." *Gregory-Rivas v. District of Columbia*, 577 F. Supp. 2d 4, 10 (D.D.C. 2008). In that case, however, the hearing officer held that plaintiff was not entitled to any award because he failed to show that he was denied a FAPE or that he had suffered any educational harm. *Id.* Here, it is uncontested that K.T. was denied a FAPE and suffered some harm, although defendant argues that plaintiff has not been sufficiently precise in detailing the harm. Moreover, the Officer never found that plaintiff was ineligible for an award, merely that "any award . . . would be arbitrary." (AR at 5-6.) Thus, unlike *Gregory-Rivas*, plaintiff has shown that she was denied an award despite being entitled to one.

## 2. The record is insufficient to evaluate plaintiff's proposed award

Even if "the Court believes some measure of compensatory education is warranted" (Def.'s Mot. at 10), defendant urges the Court not to grant plaintiff her proposed award because she has failed to provide sufficient support for it. (*Id.* at 8-11.) "Having found the Hearing Officer's reasoning unpersuasive, the Court has the authority to undertake its own review of the record, determine whether the plaintiff has met her burden of proof, and issue judgment in the case." *Suggs v. District of Columbia*, No. 08-CV-0938, 2010 WL 165199, at *8 (D.D.C. Jan. 19, 2010). However, because the Hearing Officer erred by finding that K.T. was only deprived of a FAPE for two weeks and failed to properly consider the evidence produced by plaintiff, the administrative record is "absen[t] of pertinent findings." *Reid*, 401 F.3d at 526. Additional evidence, such as evaluations of all of K.T.'s IEP goals, may also be useful. (Def.'s Mot. at 8-10.) "[T]he record in an IDEA case is supposed to be made not in the district court but primarily at the administrative level[.]" *Reid*, 401 F.3d at 527 (Henderson, J., concurring). Thus, although the Court is "troubled at the prospect of further delay," *Nesbitt I*, 532 F. Supp. 2d at 125, it will remand this case to the Hearing Officer for further proceedings that should be conducted as expeditiously as possible. The Officer should supplement the record with the information needed to "best correct" K.T.'s educational "deficits," *Reid*, 401 F.3d at 526, and to "determine an appropriate award of compensatory education" based on the District's failure to provide K.T. with an FAPE. *Brown*, 568 F. Supp. 2d at 54 (holding that plaintiff was entitled to an award, but remanding to the hearing officer to gather further evidence because plaintiff miscalculated the relevant time that the student had been denied a FAPE).

**CONCLUSION**

For the foregoing reasons, the Court finds that the hearing officer erred in failing to find that K.T. was deprived of a FAPE beginning in October 2007 and in denying plaintiff a compensatory education award. The Court will deny defendant's motion for summary judgment and will grant plaintiff's motion for summary judgment in part. The case will be remanded to the Hearing Officer to determine an appropriate compensatory education award. An Order consistent with this Memorandum Opinion is also being issued on this date.


                                    _____/s/_____
                                    ELLEN SEGAL HUVELLE
                                    United States District Judge


Dated: January 27, 2010